UNITED STATES of America,
Plaintiff–Appellee,

v.

Benjamin Thomas TISDALE, III,
Defendant–Appellant.

Nos. 88–2354, 88–2689.

United States Court of Appeals,
Tenth Circuit.

Dec. 21, 1990.

Benjamin Thomas Tisdale, III, pro se.

William H. Campbell, Oklahoma City, Okl., for defendant-appellant on opening brief.

Robert E. Mydans, U.S. Atty., and Arlene Joplin, Asst. U.S. Atty., Oklahoma City, Okl., for plaintiff-appellee.

Before HOLLOWAY, Chief Judge, and SETH and McKAY, Circuit Judges.

SETH, Circuit Judge.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.R.App.P. 34(a); Tenth Cir.R. 34.1.9. The cause is therefore ordered submitted without oral argument.

Defendant-appellant, Benjamin Tisdale, appeals his conviction for possession of firearms by a convicted felon, 18 U.S.C. § 922(g)(1), and his enhanced sentence to thirty years' imprisonment under 18 U.S.C. § 924(e)(1). He contends that (1) the trial court erred by denying his motion to suppress evidence discovered during a warrantless search of his trailer in violation of his Fourth Amendment rights, (2) his sentence was improperly enhanced under 18 U.S.C. § 924(e)(1), and (3) that his sentence under the Guidelines is unlawful and unreasonable. We affirm defendant's conviction but vacate the defendant's sentence and remand for reconsideration.

On December 4, 1987 Marshal Tsoodle and several deputy sheriffs attempted to serve a parole violator's warrant on defendant at a trailer home in Oklahoma. Tsoodle and one deputy knocked and asked for defendant while three deputies circled defendant's trailer. Tsoodle testified that after defendant's wife answered the door he saw a man dressed in underwear flee out a window. All the other deputies chased the man while Tsoodle secured the premises by himself. Tsoodle testified that he heard three gunshots but did not know who fired them.

Accompanied by defendant's wife, who acknowledged that defendant had left out the window, Tsoodle immediately engaged in a sweep search of the trailer and found

three loaded firearms in defendant's bedroom in plain view. Tsoodle took possession of the guns. He also searched defendant's blue jeans, removed defendant's wallet and took his driver's license (with photograph). Tsoodle observed, but did not seize, narcotics and drug paraphernalia. The defendant was apprehended and arrested the next day.

The trial court denied defendant's motion to suppress evidence of the firearms seized by Tsoodle. The defendant was found guilty as charged. The court enhanced defendant's sentence based on his prior convictions under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)(1), and sentenced defendant to 30 years' imprisonment. Defendant appealed (No. 88–2354) to this court and the case was remanded. At resentencing, the court determined that under § 5G1.1(b) of the Sentencing Guidelines, defendant would receive a "guideline sentence" of 15 years. The court then departed upward and sentenced defendant to 30 years. The defendant filed a second notice of appeal (No. 88–2689).

■ Defendant first contends that the evidence upon which he was convicted was obtained illegally through a warrantless search and seizure. There is no dispute that Tsoodle seized the firearms without a warrant. The government, however, contends the search was justified as a "protective sweep" of the trailer. We agree.

■ Search and seizures without a warrant are unlawful in violation of the Fourth Amendment. *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). "Protective sweeps" are an exception to the warrant requirement under the Fourth Amendment permitted to ensure an arresting officer's safety. *Maryland v. Buie,* —— U.S. ——, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990); *United States v. Owens,* 782 F.2d 146, 151 (10th Cir.1986). "A protective sweep is a quick and cursory viewing to check for other persons who might present a security risk...." *United States v. Smith,* 797 F.2d 836, 841 (10th Cir.1986). A protective sweep is reasonable if there are:

"articulable facts which, taken together with the rational inferences from those facts, ... warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene."

*Buie,* —— U.S. at ——, 110 S.Ct. at 1098.

Defendant contends that no reasonable person could perceive danger after watching him flee in his underwear, chased by sheriff deputies. Contrary to defendant's assertion, however, the danger which justifies a protective sweep comes from the possible presence of *other* armed and dangerous persons in the vicinity. *See Owens,* 782 F.2d 146, 151.

When Tsoodle went to defendant's trailer to execute an arrest warrant he was aware that defendant had a history of firearm violations and might be armed and dangerous. Tsoodle testified at the suppression hearing that after entering the trailer he saw the defendant flee out the window and heard three gunshots. He testified that he secured the premises to protect himself from the possibility of weapons or armed and dangerous persons inside the trailer.

Under these circumstances Tsoodle's actions were reasonable. The fact that defendant fled, along with the sounds of gunshots, was ample justification for a protective sweep. Given defendant's actions and background it was not unreasonable for Tsoodle to believe that other dangerous people might be present or that defendant would return.

■ Once lawfully inside the trailer, the plain view doctrine applies to support Tsoodle's seizure of the three guns. "Where the initial intrusion that brings the police within plain view of such an article is supported, not by a warrant, but by one of the recognized exceptions to the warrant requirement, the seizure is also legitimate." *Horton v. California,* —— U.S. ——, ——, 110 S.Ct. 2301, 2307, 110 L.Ed.2d 112 (1990) (quoting *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 [1971]). Here, the three weapons were found in plain view during Tsoodle's brief sweep of the premises.

■ Defendant also contests the admission of his driver's license, found in his bedroom where the guns were also found, as evidence that he also possessed the firearms. He urges that the search of his blue jeans and wallet were beyond the scope of a protective search; and therefore, his license should have been suppressed. This issue was not raised in the trial court. It is well settled that "[i]ssues not raised in the trial court will not be considered for the first time on appeal" absent a "showing of any impediment to the appellant that precluded his raising the issue" or a showing that "plain error" occurred. *United States v. Mitchell*, 783 F.2d 971, 975–76 (10th Cir. 1986); *United States v. Jordan*, 890 F.2d 247, 250 (10th Cir.1989).

There is no showing of any impediment that precluded his raising this issue below. The defendant did not raise this issue in any pre-trial motion, at the suppression hearing or at trial. He did not object to the introduction of the evidence at trial, notwithstanding the fact that the trial court judge specifically asked him whether he had an objection.

■ There is no showing that any plain error occurred by the introduction of the driver's license. Under the plain error standard, reversal is required only to correct " 'particularly egregious errors,' those errors that 'seriously effect the fairness, integrity or public reputation of judicial proceedings.' " *Mitchell*, 783 F.2d at 977 (quoting *United States v. Young*, 470 U.S. 1, 15–16, 105 S.Ct. 1038, 1046–47, 84 L.Ed.2d 1 [1985]). The record demonstrates that aside from the driver's license, there was strong circumstantial evidence to support the finding that the defendant possessed the firearms. The firearms were confiscated from the defendant's trailer and bedroom. There was no evidence that anyone else aside from his wife and daughter resided at the premises. Constructive possession is inferred when a person exercises dominion and control over an item. *United States v. Bolton*, 905 F.2d 319, 323 (10th Cir.1990). For these reasons, we find that defendant has failed to preserve this issue for review.

■ Defendant next asserts that the trial court erred by using his prior convictions to enhance his sentence under 18 U.S.C. § 924(e)(1). We will review *de novo* the trial court's interpretation and application of the ACCA. *See United States v. O'Neal*, 910 F.2d 663, 665 (9th Cir.1990). A person who violates 18 U.S.C. § 922(g)(1) may be subject to an enhanced penalty with proof of three prior convictions for any violent felony or serious drug offense committed on "occasions different from one another." 18 U.S.C. § 924(e)(1). Defendant's prior convictions must arise from "separate criminal transactions." *Bolton*, 905 F.2d at 323.

The government listed four prior convictions in its notice of intent to seek an enhanced penalty. Three of these were burglary convictions which occurred on the same date and were prosecuted together in 1981. The defendant broke into a shopping mall and burglarized two private businesses and a post office located inside the shopping mall. The record does not indicate the precise time of the burglaries; however, the trial court determined that they were committed "successively" during the night of September 18, 1977. Rec. Vol. V. at 3. After an evidentiary hearing, the trial court found that defendant's three prior burglary convictions arose from "separate and distinct" criminal episodes and could be considered as predicate offenses for enhancement purposes.

Defendant contends that his three burglary convictions arose out of a single criminal episode. This issue turns on whether defendant's conduct of breaking into the shopping mall and burglarizing three separate businesses inside the mall, on the same night, is a single criminal transaction under the statute. According to defendant the events should be construed as arising out of one criminal episode because they occurred on the same night at the same location. The defendant relies on *United States v. Petty*, 798 F.2d 1157 (8th Cir. 1986), *vacated*, 481 U.S. 1034, 107 S.Ct. 1968, 95 L.Ed.2d 810, *on remand*, 828 F.2d 2 (8th Cir.1987).

As an initial matter, we agree with the defendant that § 924(e)(1) was intended to reach multiple criminal episodes distinct in

time. A plain reading of the statutory language of § 924(e)(1), "occasions different from one another", supports the conclusion that Congress intended the three predicate offenses to be distinct in time. Numerous other circuits have reached this conclusion. *See e.g., United States v. Schieman*, 894 F.2d 909 (7th Cir.1990); *United States v. Towne*, 870 F.2d 880 (2d Cir.1989); *United States v. Herbert*, 860 F.2d 620 (5th Cir.1988); *United States v. Gillies*, 851 F.2d 492 (1st Cir.1988); *United States v. Rush*, 840 F.2d 580 (8th Cir.1988); *United States v. Wicks*, 833 F.2d 192 (9th Cir.1987).

Defendant's reliance on *Petty*, however, is misplaced. In *Petty*, the underlying convictions stemmed from one incident where Petty simultaneously robbed several individuals at the same restaurant. Here, it is clear that the defendant could not simultaneously burglarize three separate businesses. In distinguishing *Petty*, the trial court stated:

"[In *Petty*] ... we had a person who simultaneously committed a number of armed robberies because simultaneously he put a number of people in fear, who happened to be assembled at the same time and place. It represented the carrying out of but a single criminal intent, which, as the law defines separate crimes, separately affected the various victims there....

"In the case at bar, after the burglar entered the primary structure it was necessary to make an individual decision to burglarize the Post Office and each of the two private businesses therein, and at any time in that course of conduct, whether because of fear of apprehension or not, Mr. Tisdale could have broken off his pattern of burglary and stopped after one or stopped after two but, instead, elected, as is demonstrated on the face of the convictions, to continue through the series."

Rec. Vol. IV. at 13–14.

We find the trial court's reasoning persuasive. After the defendant "successfully completed" burglarizing one business, he was free to leave. The fact that he chose, instead, to burglarize another business is evidence of his intent to engage in a sepa-

rate criminal episode. Moreover, unlike *Petty*, the defendant's burglaries did not occur at the same location. The record shows that although defendant entered one shopping mall he had to physically break and enter three separate structures. The fact each incident occurred inside one enclosed structure does not alter our conclusion that the crimes were committed at different locations. Thus we find that the trial court properly enhanced the defendant's penalty under § 924(e)(1).

The defendant's third argument challenges the trial court's imposition of a 30–year sentence. He contends that the ACCA penalty provision is inapplicable under the Guidelines, that the court erred in applying § 5G1.1 to determine his sentence, and that the trial court's upward departure was unlawful and unreasonable. Because we find that the court erred in applying the Guidelines, we vacate defendant's sentence and remand for resentencing.

The trial court originally sentenced defendant to 30 years' imprisonment under the Guidelines because his offense was committed on December 4, 1987 after the effective date of the Guidelines (November 1, 1987). However, the court ordered resentencing because the prior sentencing court failed to consider § 5G1.1 and state reasons for its upward departure. At resentencing, the court relied on § 5G1.1 in determining that defendant's "guideline sentence" was 15 years. The court then announced it would depart upward from the defendant's "guideline sentence" and imposed a 30–year term of imprisonment. The court's decision to depart upward was based on four aspects of the "offense conduct" that was not "otherwise taken into account in the establishment of the guidelines." Rec. Vol. V. at 8. The court listed the following reasons: the fact that the defendant was convicted for the possession of three firearms, even though the statute only required one firearm; the fact that all the firearms were loaded; the appearance of "illicit conduct relative to contraband drugs" apparent from circumstantial evidence surrounding the search; and last, the defendant's attempt to resist arrest. *Id.*

■ Defendant first asserts that the trial court erred in finding that the penalty

enhancement provision under 18 U.S.C. § 924(e)(1) is applicable under the Guidelines. As support, he apparently urges that § 4B1.1 (governing "career offender") was intended to supplant § 924(e)(1) because, unlike § 922(g), the Commission recognized no specific guideline in § 924(e)(1). This contention is meritless.

■ The trial court's legal conclusions with respect to the application and interpretation of the Guidelines are subject to *de novo* review. *United States v. Whitehead,* 912 F.2d 448, 450 (10th Cir.1990). 18 U.S.C. § 924(e)(1) mandates a minimum 15-year sentence upon conviction and a maximum of life imprisonment. *See United States v. Gourley,* 835 F.2d 249 (10th Cir. 1987). The Sentencing Commission's failure to give § 924(e)(1) a specific guideline stems from the fact that § 924(e)(1) does not define a substantive crime, but rather is a penalty provision "designed to designate additional punishment for armed, repeating, criminals." *United States v. Gregg,* 803 F.2d 568, 570 (10th Cir.1986). The Guidelines take penalty enhancements like § 924(e)(1) into consideration under § 5G1.1(b). At the time of defendant's sentencing, § 5G1.1(b) read:

"If application of the guidelines results in a sentence below the minimum sentence required by statute, the statutory minimum sentence shall be the guideline sentence."

The commentary to that section clearly reflects the Commission's intention that the Guidelines adopt the statutory minimum sentence where the applicable guideline range is less than what is provided for by statute.

■ The defendant also contends that the trial court should have applied § 4B1.1 instead of § 5G1.1 to determine his "guideline sentence". We review the trial court's application of the Guidelines to determine whether defendant's sentence:

"(1) was imposed in violation of law;

"(2) was imposed as a result of an incorrect application of the sentencing guidelines;

"(3) is outside the applicable guideline range, and is unreasonable...."

18 U.S.C. § 3742(e); *United States v. Trujillo,* 906 F.2d 1456, 1466 (10th Cir.1990) (quoting 18 U.S.C. § 3742(e)). After review of the record, however, it is evident that we cannot engage in any meaningful review because the trial court's sentence was imposed as a result of an application of the Guidelines with which we do not agree.

The Guidelines set out specific procedures for the sentencing court to follow in order to calculate the appropriate sentencing range. These procedures require the court to calculate the offender's total offense level to select the corresponding guideline range. *See generally,* United States Sentencing Commission, *Guidelines Manual,* § 1B1.1; *United States v. Roberts,* 898 F.2d 1465, 1466–67 (10th Cir.1990). Here, § 2K2.1(a)(2) is the specific provision which governs an offense committed under § 922(g)(1). At the time defendant committed the instant offense, that provision provided that he would have a base offense level of 9. From the record before us, however, it appears that the trial court failed to use the procedures set forth under § 1B1.1 to determine defendant's appropriate sentence range under the Guidelines.

The record indicates that the trial court determined defendant's "guideline sentence" by taking the minimum statutory period under § 924(e)(1) of 15 years and equating that to the "guideline sentence." *See* Rec. Vol. V. at 4. The court interpreted § 5G1.1(b) as providing "just a specific guideline sentence ... without any range at all...." *Id.* at 4. Apparently, the court, finding no need to determine the defendant's applicable guideline range under § 5G1.1, did not calculate defendant's criminal history category or his appropriate offense level pursuant to § 1B1.1.

It is clear, however, that the propriety of the trial court's application of § 5G1.1 hinges on the defendant's appropriate sentencing range pursuant to § 1B1.1. Section 5G1.1 is only applicable where the "application of the guideline results in a sentence below the minimum sentence required by statute...." The Commission further clarified § 5G1.1 in a subsequent amendment:

"Where a statutorily required minimum sentence is greater than the maximum of

*applicable guideline range,* the statutorily required minimum sentence shall be the guideline sentence."

U.S.S.G. § 5G1.1(b) (Nov.1989) (emphasis added). Absent information concerning the defendant's applicable sentencing range, we cannot review whether the trial court should have applied § 4B1.1 or § 5G1.1 to reach defendant's appropriate "guideline sentence".

We also cannot determine whether the trial court's upward departure is justified or reasonable. Although the court specified grounds for its upward departure, without any information on what conduct was considered in determining the defendant's offense level or criminal history category we are left to speculate as to whether the cited reasons for departure were already adequately considered under the Guidelines. *See United States v. Smith,* 888 F.2d 720, 724 (10th Cir.1989) ("[A]lthough we assume the court believed the defendant's acts were beyond the norm for the offense as set out in the guidelines, without the court's enumeration of the factors upon which that belief was predicated, we simply are left to speculation.").

As a final matter, we reject defendant's claim that imposition of a different fine during the second sentencing violated the Double Jeopardy Clause of the Constitution. Tisdale did not have a legitimate expectation of finality in the first fine imposed. *See United States v. Earley,* 816 F.2d 1428, 1433 (10th Cir.1987) ("In most cases, the courts' power to alter or correct sentences has been recognized as co-extensive with the courts' basic sentencing power, extending through the end of the direct appeals and retrial process, limited only by the constitutional finality associated with acquittal on the merits.").

Although we find no constitutional violation, the trial court judge misinterpreted the fine provision of § 924(e)(1). During the second sentencing, the judge raised Tisdale's fine from $1 to $25,000 stating that "[a] fine is imposed in the amount of $25,000, pursuant to the mandatory minimum provisions of the enhancement statute...." Rec. Vol. V. at 7. The statutory language

of § 924(e)(1), however, states that "a person who violates section 922(g) ... shall be fined *not more than $25,000* and imprisoned not less than fifteen years...." (Emphasis added.) Thus on remand, the judge should consider the $25,000 a ceiling. The judge can impose a lesser fine or waive the fine if the judge determines that the appellant is not able to pay. *See* U.S.S.G. § 5E1.2(f); *United States v. Labat,* 915 F.2d 603 (10th Cir.1990).

Defendant's conviction is AFFIRMED; however, we VACATE the trial court's sentence and REMAND for resentencing.

IT IS SO ORDERED.