**Richard LOUSTALOT**

v.

**Darryl RICE, et al.**

**Civ. A. No. 86–473–A.**

United States District Court,
M.D. Louisiana.

May 17, 1991.

Dennis R. Whalen, Baton Rouge, La., for plaintiff.

Fred H. Belcher, Jr., Belcher & Prendergast, Baton Rouge, La., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

JOHN V. PARKER, Chief Judge.

This matter is before the court for a decision following trial on the merits. After carefully considering the evidence and argument of counsel, the court now renders its findings of fact and conclusions of law in accordance with Fed.R.Civ.P. 52(a).

### FINDINGS OF FACT

1. On July 16, 1985, the owner of Gene's Pawn Shop, in Baton Rouge, had in his place of business a letter signed by the Chief of Police of the City of Baton Rouge which designated detectives, Norris G. Douget and Wayne McDaniel, to "inspect the books of any pawn shop broker." These officers were informally referred to as the "pawn shop detail" by the pawn brokers, as well as by the Police Department.

2. Through time, the Baton Rouge City Police Department and Baton Rouge pawn shop brokers have established a custom, pursuant to the Louisiana Revised Statutes relating to pawn shops and second hand dealers of goods, whereby certain officers who were assigned to the "pawn shop detail" would inspect the pawn shop books and take possession of stolen goods sold to the pawn shops.

3. On July 16, 1985, plaintiff, Richard Loustalot, was an employee of Gene's Pawn Shop located at 3345 Plank Road in Baton Rouge, Louisiana.

4. The employees at Gene's Pawn Shop, including plaintiff, as a result of their experiences with the "pawn shop detail" were under the impression that only the officers designated to the "pawn shop detail" had authority to inspect the books or seize property allegedly stolen. A routine had been established between officers Douget and McDaniel with the employees at Gene's Pawn Shop in which one of the officers would call on the telephone, describe property for which he was searching, and, if then possessed by Gene's, the officer would request that it be held separately until he

had time to pick it up. Plaintiff had such experiences prior to July 16, 1985.

5. On that day, two Baton Rouge police officers, defendants, Darryl Rice and Earnest C. Brewer, entered Gene's Pawn Shop. Neither was assigned to the "pawn shop detail" nor displayed any written authority entitling him to inspect the pawn shop books.

6. Judy Smith accompanied the two police officers. Smith had been arrested and later confessed to stealing a "diamond cluster" ring in East Feliciana and selling the ring to Gene's Pawn Shop.

7. After entering, the defendants approached plaintiff and asked whether the records could be examined to determine if this ring had been sold to Gene's Pawn Shop.

8. Plaintiff at first demurred, requesting that the officers send the "pawn shop detail," but eventually he and another employee of the pawn shop, Mark Strother, examined the records and determined that Smith had sold a diamond cluster ring to the pawn shop and that the ring was still in the possession of the pawn shop. Upon defendant Brewer's request, plaintiff then retrieved the ring and displayed it to the defendants.

9. Judy Smith then identified the ring as the one she stole and sold to the pawn shop.

10. After having the ring identified by the alleged thief, Brewer demanded that plaintiff turn the ring over to the defendants. Brewer's demand was not accompanied by "a certified copy of the police report in which the item was reported stolen," or "presentation by the owner of proof of ownership of the item," nor, as noted above, was he a member of the "pawn shop detail."

11. Plaintiff refused, stating that the officers were not members of the "pawn shop detail" and were therefore not authorized to seize the ring without a warrant.

12. Plaintiff informed the officers that he would put the ring in an envelope, mark the envelope "hold for city," keep the ring behind the counter and surrender it to the "pawn shop detail." Plaintiff stated further that if the officers returned with a warrant or, upon instruction by one of the officers assigned to the "pawn shop detail," he would turn the ring over without objection.

13. The defendants left the pawn shop, prepared an affidavit in order to secure a search warrant of Gene's Pawn Shop for "a woman's diamond cluster wedding ring," and an arrest warrant for plaintiff charging for "illegal possession of stolen goods" and "resisting an officer."

14. In the affidavit presented to the Honorable Robert Downing of the Nineteenth Judicial District Court, the defendants stated:

> ... Affiants and Smith ... went to Gene's Pawn Shop, 3345 Plank Road, B.R., La. and contacted a W/M employee. Affiants properly identified themselves as Police Officers and advised the employee that the defendant (Smith) had admitted to stealing a ring and selling it to them. The employee then checked his records and found that the defendant did sell them a diamond cluster ring on 7-5-85. The employee then showed affiants a diamond cluster ring and stated it was the ring Judy had sold them. Judy then observed the ring and identified it as being the ring she had stolen from Clinton, La. Affiants then asked the employee for the ring. The employee then refused to give the ring to affiants. Affiants had advised the employee that the ring was stolen from Clinton, La.

15. The defendants did not include in the affidavit the information regarding the "pawn shop detail," nor the particulars of the conversation between the parties, nor the fact that plaintiff told the defendants that he would hold the ring in an envelope awaiting the proper authority.

16. Judge Downing signed the search and arrest warrant and on July 17, 1985, Officers Brewer and Rice, along with two other officers, Dickinson and Starkey, went to Gene's Pawn Shop.

17. The officers entered the premises and approached Gene Strother, the owner

of the pawn shop, demanding that they be allowed behind the counter to search for the ring. Strother asked to see the warrant and Officer Brewer placed the warrant on the counter. Strother then allowed the officers behind the counter and defendant Rice approached and told plaintiff that he was under arrest for receiving stolen goods and resisting an officer.

18. Strother gave Officer Brewer the ring. Just as plaintiff had represented, the ring was in an envelope and behind the counter.

19. Despite having the ring in hand, the officers searched the premises and checked the serial numbers on the firearms, television sets and video cam recorders located in the rear of the store.

20. Thereafter, plaintiff was taken by the officers to a holding cell at the Hollywood Street police station where he was booked and fingerprinted. He was then transferred and booked into the East Baton Rouge Parish Prison.

21. After spending more than three hours in confinement, Strother posted bail and plaintiff was released.

22. Although plaintiff testified that he was never informed that the charges against him were formally dropped, the charges for receiving stolen goods and resisting an officer were never prosecuted.

23. Plaintiff testified that other than spending three hours in jail, he suffered no actual injury. He did testify that he suffered mental anguish and humiliation as the events became known in the community.

24. On July 17, 1986, plaintiff filed this action under 42 U.S.C. § 1983 against defendants, Brewer and Rice, alleging that their actions deprived plaintiff of his Fifth and Fourteenth Amendment rights to be free from "unreasonable interference in his liberty," to be free from "unlawful arrest" and "from punishment without trial." In addition, plaintiff asserts a pendent claim against defendants under Article 2315 of the Louisiana Civil Code for false imprisonment.

Defendants claim that they made a lawful arrest under a valid warrant issued by an impartial magistrate, or, if there was some defect in the matter, that they are shielded by qualified immunity.

In response, plaintiff argues that the affidavit upon which the warrant rested was defective because officers Rice and Brewer left out vital information which renders the warrant invalid.

## CONCLUSIONS OF LAW

1. This court has subject matter jurisdiction pursuant to 42 U.S.C. § 1983.[1]

2. Louisiana has unusual statutes regulating pawn shops and second hand dealers of goods.

3. LSA–R.S. 37:1755 requires that pawn brokers keep records of articles pawned including identification of the person making the loan and a description of the thing pawned. LSA–R.S. 37:1861 provides identical requirements for second hand dealers. Those requirements are not unusual but other statutes limit access to the records.

4. LSA–R.S. 37:1756 provides that: The book containing records of loans and pledges required in R.S. 37:1755 and the various articles pledged and referred to therein, shall be a bound volume, and shall at all times *be opened to the inspection of* law enforcement officers of the Office of State Police, or the *superintendent of police of the city or town in which the pawnbroker does business or anyone designated by him in writing,* or to the sheriff or his deputy of the parish in every city or town in the parish wherein the pawnbroker transacts business. (emphasis supplied)

LSA–R.S. 37:1865 provides for identical access to the records of second hand dealers. These are the provisions under which the Chief of Police of the City of Baton Rouge has designated the "pawn shop detail."

Sections 1755 and 1865 clearly provide for access to the records by all state police,

1. The constitutional right to liberty embraces a right to be free from false imprisonment and it can be safeguarded in § 1983 actions. See *Ford v. Wells,* 347 F.Supp. 1026 (E.D.Tenn.1972).

by the sheriff and by all deputies but restrict access by city police officers to the "superintendent of police of the city" and those "designated by him in writing." The legislative purpose served by restricting access to records which are no doubt more frequently needed by city police than other law enforcement officers is not immediately apparent. The legislative language *is*, however, clear: only those officers who are designated in writing by the chief of police may inspect the records of pawn shops and second hand dealers; hence, the "pawn shop detail."

5. LSA–R.S. 37:1770 provides that:

Notwithstanding any provision of the Louisiana Civil Code or any other provision of law to the contrary, when the operator of a pawn shop has acquired a stolen item, the operator of the pawn shop shall return the item to the owner, at no cost to the owner, upon presentation by the owner of proof of ownership of the item and a certified copy of the police report in which the item was reported stolen.

There is no similar provision applicable to second hand dealers.

Under the terms of Section 1770, the owner of a stolen article which has been acquired by a pawn shop may obtain its return upon compliance with the statute, despite any contrary provision of the Louisiana Civil Code.

6. Plaintiffs contend that under Louisiana law, neither Rice nor Brewer was authorized to inspect the records of Gene's Pawn Shop or to seize the ring, that authority having been bestowed exclusively upon the members of the "pawn shop detail" by Sections 1755 and 1865. Plaintiffs further assert that, since neither Rice nor Brewer was the owner of the ring and neither produced a "certified copy of the police report" from East Feliciana Parish, they had no lawful authority to seize the ring, either on July 16, the date they first entered, or on July 17, the date of arrest. Plaintiff argues that had the affidavit contained the omitted information (that neither officer was a member of the "pawn shop detail" and that plaintiff indicated that he

would hold the ring for the "pawn shop detail") the neutral magistrate would have realized that plaintiff was in compliance with the pawn shop statutes and would have declined to issue the warrant. Thus, plaintiff claims the warrant is void and offers no protection.

7. It is well established that even an officer who acts with malice in procuring an arrest warrant or indictment will not be liable if the facts supporting the warrant or indictment are put before an impartial intermediary. *Smith v. Gonzales,* 670 F.2d 522 (5th Cir.1982), cert. denied, 459 U.S. 1137, 103 S.Ct. 772, 74 L.Ed.2d 984 (1983). It is equally well established, however, that an officer who knowingly does not place all the facts before the neutral intermediary cannot thereafter rely upon qualified immunity to absolve himself of liability. *Hand v. Gary,* 838 F.2d 1420 (5th Cir.1988); *Hale v. Fish,* 899 F.2d 390 (5th Cir.1990).

8. Plaintiff's analysis of the pawn shop law is correct up to a point, but only up to a point. It is correct that under Sections 1756 and 1865, only those city police officers who are designated in writing by the chief of police may inspect the records of pawn shops and second hand dealers. It is also correct that neither of the defendant officers was so designated. Those sections, however, place no additional limitation upon the authority of any law enforcement officer to seize evidence of crime which is in plain view. Neither Brewer nor Rice inspected the books at Gene's Pawn Shop. Plaintiff himself made the search, at the request of the officers, and plaintiff himself voluntarily produced the ring which was identified as stolen property. Surely a police officer violates no one's rights when he merely requests a pawn broker to examine his own records. Had plaintiff declined to search the records, he would have been in compliance with Louisiana's peculiar law and the officers were not authorized to conduct any search themselves. Plaintiff went further, however, and produced the ring himself.

9. Thus, it becomes necessary to discuss the constitutional limits on the authority of the police to seize property. Defen-

dants argue that they were entitled to seize the stolen ring, even without a warrant when it was produced, under a number of exceptions to the warrant requirement.

10. In general, "a search conducted without a warrant issued upon probable cause is per se unreasonable ..." *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 2043, 36 L.Ed.2d 854 (1973); See also *Marshall v. Barlow's Inc.*, 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978); *Michigan v. Tyler*, 436 U.S. 499, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978). However, there are six generally recognized exceptions to the warrant requirement. Those exceptions are: 1) search incident to a lawful arrest, see *Gustafson v. Florida*, 414 U.S. 260, 94 S.Ct. 488, 38 L.Ed.2d 456 (1973); 2) automobile exception, see *United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982); 3) the plain view doctrine, see *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *Horton v. California*, — U.S. —, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990); 4) consent to search the protected area, see *Schneckloth v. Bustamonte*, supra, *Bumper v. North Carolina*, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968); 5) stop and frisk, see *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); and 6) hot pursuit, exigent circumstances, see *Cupp v. Murphy*, 412 U.S. 291, 93 S.Ct. 2000, 36 L.Ed.2d 900 (1973).

11. In the case at bar, defendants argue that a search warrant was not required at the initial meeting between the plaintiff and the defendants because: 1) plaintiff effectively gave his consent to have the ring seized; 2) the ring was in plain view; and 3) exigent circumstances existed.

■ 12. The first issue is whether plaintiff effectively "consented" to the request to examine the records of the pawn shop and to then display the stolen ring. "Consent" vitiates the need for a search warrant where the consent is "voluntarily" given. *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). Effective consent does not require knowledge that the individual has a right

to refuse the request. *Id.*, 93 S.Ct. at 2051. As the *Schneckloth* court stated:

> Its ruling [the Ninth Circuit Court of Appeals], that the State must affirmatively prove that the subject of the search knew that he had a right to refuse consent, would, in practice, create serious doubt whether consent searches could continue to be conducted ... Any defendant who was the subject of a search authorized solely by his consent could effectively frustrate the introduction into evidence of the fruits of that search by simply failing to testify that he in fact knew he could refuse to consent ... In sum, there is no reason for us to depart in the area of consent searches, from the traditional definition of voluntariness. *Id.*, 93 S.Ct. at 2049.

13. After plaintiff voluntarily and without objection determined that the stolen ring was still in the possession of the pawn shop, the defendants asked plaintiff whether they could see it. Again, without objection, plaintiff retrieved and displayed the ring. Under these circumstances, the court must conclude that plaintiff voluntarily consented to the search and the privacy interest of neither plaintiff nor the pawn shop was invaded.

■ 14. Once plaintiff displayed the ring to the defendants, the question becomes whether the defendants were empowered to "seize" the ring. In *Horton v. California*, — U.S. —, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990), the Supreme Court discussed the "plain view" exception to the warrant requirement and the power of the police to seize property. The Court began its analysis by distinguishing between the rights violated by warrantless "searches" and those violated by warrantless "seizures":

> The right to security in person and property protected by the Fourth Amendment may be invaded in quite different ways by searches and seizures. A search compromises the individual interest in privacy; a seizure deprives the individual of dominion over his or her person or property ... The plain view doctrine is often considered an exception to the general

rule that warrantless searches are presumptively unreasonable, but this characterization overlooks the important difference between searches and seizures. If an article is already in plain view, neither its observation nor its seizure would involve any invasion of privacy ... A seizure of the article, however, would obviously invade the owner's possessory interest ... If "plain view" justifies an exception from an otherwise applicable warrant requirement, therefore, it must be an exception that is addressed to the concerns that are implicated by seizures rather than by searches. *Id.*, 110 S.Ct. at 2306.

15. With that said, the Court addressed the requirements for a legitimate "plain view" seizure of contraband or other evidence. It is first "an essential predicate to any valid warrantless seizure of incriminating evidence that the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed." *Id.*, 110 S.Ct. at 2308. Next, the Court stated that "not only must the item be in plain view, its incriminating character must also be immediately apparent." *Id.* Finally, "not only must the officer be lawfully located in a place from which the object can be plainly seen, but he or she must also have a lawful right of access to the object itself." *Id.*

16. Several appellate courts have commented upon the Horton decision. First, in *United States v. Cardona–Rivera*, 904 F.2d 1149, 1155 (7th Cir.1990), the court stated:

As Horton has now placed beyond doubt, they [the police] can seize whatever contraband or other evidence of crime they see in the course of a lawful search, provided they do not exceed the bounds of that search: if they are looking for a doberman pinscher they cannot search the pockets of trousers hanging in the closet and seize whatever their hands bring into sight, even if they are lawfully in the closet to make the search.

In *United States v. Tisdale*, 921 F.2d 1095 (10th Cir.1990), the court relied on *Horton* to validate the seizure by police officers of certain weapons supposedly used during the commission of a crime. The *Tisdale* court stated that:

Once lawfully inside the trailer, the plain view doctrine applies to support Tsoodle's seizure of the three guns. "Where the initial intrusion that brings the police within plain view of such an article is supported, not by a warrant, but by one of the exceptions to the warrant requirement, the seizure is also legitimate. *Horton v. California,* — U.S. —, ——, 110 S.Ct. 2301, 2307, 110 L.Ed.2d 112 (1990) quoting *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). Here, the three weapons were found in plain view during Tsoodle's brief sweep of the premises.

In *United States v. Barnes*, 909 F.2d 1059 (7th Cir.1990), the court held that the police, acting pursuant to a search warrant for cocaine, could seize a "spiral notebook" found in "plain view" during the course of the search. The court stated that the calculations inside the notebook "as to grams and ounces," as well as lists of individuals with notations as to "paid" and "owed," made the "incriminating nature" of the notebook immediately apparent. *Id.* at 1070.

17. In this case, plaintiff voluntarily displayed the ring to the defendants. The woman who had stolen the ring and sold it to the pawn shop then positively identified it. At that time, the defendants had probable cause to believe that the ring was the subject of the crime that they were investigating. They were lawfully in the pawn shop—they "did not violate the Fourth Amendment in arriving at the place from which the [ring] could be plainly viewed." *Horton,* 110 S.Ct. at 2308. The "search" was authorized by plaintiff's consent, a seizure of the ring was authorized by the "plain view" doctrine.

■ 18. Next we must determine whether the defendants had probable cause to charge plaintiff with any offense: LSA–R.S. 14:108 states that:

Resisting an officer is the intentional opposition or resistance to or obstruction of an individual acting in his official capacity and authorized by law to make a lawful arrest or *seizure of property* or to

serve any lawful process or court order when the offender knows or has reason to know that the person arresting, seizing property, or serving process is acting in his official capacity. (Emphasis added)

19.   The police officers, on July 16 were authorized to "seize" the ring as evidence of crime under the preceding analysis. They requested that plaintiff surrender the ring to them. Thus, they were attempting to make "a lawful seizure of property" and they had reason to believe that plaintiff was resisting or obstructing them. Had they arrested plaintiff in the store without a warrant, it would have been a lawful arrest, since the offense was committed in their presence.

20.   Although plaintiff believed in good faith that the defendants did not have the authority to seize the ring, his refusal to relinquish possession of the item placed him in probable violation of Section 108 cited above. Therefore, the arrest of plaintiff was justified [2] and the subsequent actions of the defendants in procuring the arrest warrant are not actionable.

Accordingly, judgment will be entered in favor of the defendants.

**2.**  Where an individual is arrested and there is probable cause of one crime to support the arrest, the fact that he is charged with a second crime, or that he is originally charged with a different related crime, is of no moment; the arresting police officers can rely on qualified immunity and the arrestee does not have a valid § 1983 cause of action. See *Pfannstiel v. City of Marion*, 918 F.2d 1178 (5th Cir.1990); *Trejo v. Perez*, 693 F.2d 482 (5th Cir.1982).