**UNITED STATES of America,
Plaintiff–Appellee,**

**v.**

**Joe Lowell McELYEA, Jr.
Defendant–Appellant.**

**No. 97–10269.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 15, 1998.

Decided Oct. 16, 1998.

Gregory A. Bartolomei, Bartolomei & Victor, Phoenix, AZ, for defendant-appellant.

Paul V. Rood, Assistant United States Attorney, Phoenix, AZ, for plaintiff-appellee.

Before: NOONAN and TROTT, Circuit Judges, and WALLACH, Judge.*

WALLACH, Circuit Judge.

Appellant Joe Lowell McElyea ("McElyea") appeals his jury conviction for two counts of a felon in possession of a firearm under 18 U.S.C. § 922(g)(1) (1996). McElyea argues that it was reversible error for the district court to fail to instruct the jury that the Government had the burden to prove beyond a reasonable doubt that McElyea's civil rights had not been restored. As a result, McElyea argues that his conviction was unlawful.

In the alternative, he appeals the sentence imposed upon him by the district court. He claims that the district court improperly enhanced his sentence when it sentenced him as an "Armed Career Criminal" pursuant to 18 U.S.C. § 924(e)(1) because two of the predicate convictions were not "committed on occasions different from one another". We have jurisdiction pursuant to 28 U.S.C. § 1291. We affirm the conviction, but remand the case for resentencing.

I. Jury Instructions

On February 7, 1997, McElyea was convicted of possessing a Lorcin .380 caliber semi-automatic pistol and a Marlin .22 caliber rifle. Appellant's Excerpts of Record ("E.R.") A and H. Under 18 U.S.C. § 922(g)(1), convicted felons are prohibited from possessing firearms. The statute provides: "[i]t shall be unlawful for any person ... who has been convicted in any court of [ ] a crime punishable by imprisonment for a term exceeding one year ... to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." 18 U.S.C. § 922(g). Section 921(a)(20) provides, *inter alia:* "Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such a pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms."

In 1980, McElyea was convicted of two counts of burglary, a felony. McElyea received a conviction for selling narcotic drugs, also a felony, in 1985. McElyea claims that he believed his civil rights were restored under Arizona law in 1992 and that he could lawfully possess a firearm. He reasons that because the state of Arizona approved his application for a voter's registration card, called him for jury duty, and permitted him to vote in several elections, his civil rights were restored. Consequently, he claims that the district court should have instructed the jury that the Government had the burden of proving beyond a reasonable doubt that his civil rights were not restored.

■ "We review de novo whether [a defendant's] rights have been restored such that the prior convictions may not be used as predicate offenses in a prosecution under 18 U.S.C. § 922(g)." *United States v. Oman,* 91 F.3d 1320, 1321 (9th Cir.1996). We look to state law to determine whether a defendant's civil rights were substantially restored. *United States v. Dahms,* 938 F.2d 131, 133 (9th Cir.1991). The state of Arizona, where McElyea was convicted, automatically suspends the right to vote, hold public office of trust or profit, serve as a juror, possess a gun or firearm, or any other civil rights necessary while such person is imprisoned. *See* Ariz.Rev.Stat. § 13–904(A). Suspension is designed to ensure the security of the institution and reasonable protection of the public from all convicted felons. *Id.* However, after discharge from prison, a convicted felon "may have any civil rights which were lost or suspended by his conviction restored by the superior court judge by whom the

---

* The Honorable Evan J. Wallach, United States Court of International Trade, sitting by designa-   tion.

person was sentenced or his successors in office from the county in which he was originally sentenced." Ariz.Rev.Stat. § 13–906(A).

■ McElyea claims that he petitioned the Maricopa County Superior Court to have his civil rights restored in 1992. Reporter's Transcript ("RT") vol. III at 344. Although he did not receive any communications regarding his application, he applied for a voter registration card approximately six weeks later. McElyea testified that when he applied for the voter registration card he signed a statement that he had never been convicted of a felony or that if he had his civil rights had been restored. *See* RT vol. III at 371. He stated that he signed it because he "felt that [his] rights had been restored." RT vol. III at 349. He also testified that he never received any correspondence from the court informing him that his civil rights had been restored. RT vol. III at 369.

We find that McElyea's civil rights were not restored, and he had no reasonable expectation they would be. Under Arizona law, a convicted felon is not allowed to apply for the restoration of his civil rights until two years have passed from the date of absolute discharge. *See* Ariz.Rev.Stat. § 13–906(B). Here, McElyea testified that "[he] had received an absolute discharge in April [of 1992], and [he] waited approximately two weeks before [he] went and filled out the application [for restoration of his civil rights]." RT vol. III at 345. McElyea was ineligible for restoration of his civil rights at that time. In addition, McElyea received no notification that his petition for restoration of his civil rights had been granted and the record does not reflect that any such documentation exists. Consequently, McElyea's statement on his application for voter registration that his civil rights had been restored was fraudulent. We normally look to whether a felon has been restored the right to sit on a jury, to vote, and to hold public office in determining if the felon's civil rights have been restored. *See United States v. Andaverde,* 64 F.3d 1305, 1309 (9th Cir.1995), *cert.*

*denied,* 516 U.S. 1164, 116 S.Ct. 1055, 134 L.Ed.2d 199 (1996). However, where, as here, those rights were granted based on his misrepresentation, we will give them no weight.[1]

Because we find that McElyea's civil rights were not restored, the district court did not commit reversible error in its instructions to the jury.

## II. Enhanced Sentence

■ We review de novo the application of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e) (1994); *see also United States v. Antonie,* 953 F.2d 496, 497 (9th Cir.1991). The statute provides:

> In the case of a person who violates § 922(g) of this title and has three previous convictions by any court referred to in § 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined not more than $25,000 and imprisoned not less than fifteen years....

18 U.S.C. § 924(e)(1).

■ McElyea does not dispute that his 1985 conviction for sale of narcotics qualifies as one previous conviction within the meaning of the statute. He claims, however, that his two burglary convictions in 1980 do not constitute felonies "committed on occasions different from one another". The facts underlying McElyea's convictions in 1980 are as follows: on March 15, 1979, McElyea and an accomplice broke into a store that was part of a strip mall. Once inside the store, they chopped a hole in the wall between the store they had entered and the adjoining store. Items were removed from each store. RT for June 2, 1997 at 13. Based on these facts, McElyea says his actions constituted a single criminal transaction.

## A. Legislative History Of The ACCA

■ The statutory language "committed on occasions different from one another" is ambiguous. When a statute is ambiguous,

---

1. The state of Arizona revoked McElyea's right to vote on September 4, 1996. RT vol. III at 367– 68.

we may look to legislative history as a guide to its meaning. *See Tennessee Valley Authority v. Hill,* 437 U.S. 153, 184 n. 29, 98 S.Ct. 2279, 57 L.Ed.2d 117 (1978). "The [Armed Career Criminal] Act was promulgated to punish habitual offenders who were found to be disproportionately responsible for violent crimes." *United States v. Antonie,* 953 F.2d at 499 (citing ACCA: Hearing on H.R. 1627 and S. 52 Before the Subcomm. on Crime of the House Judiciary Comm., 98th Cong., 2d Sess. 12–13 (1984) (statement of Senator Spector)).

The predecessor statute to the present ACCA did not include the language "committed on occasions different from one another". 18 U.S.C.App. § 1202(a)(1) (1982). That language was added in 1988. No Senate or House Report was submitted with the legislation amending § 924(g). *See* 1988 U.S.C.C.A.N. 5937. Nor does the legislative history supply a precise meaning for the phrase at issue. However, it does provide some guidance.

Senator Biden, Chairman of the Judiciary Committee, included a statement in the Congressional Record which set forth "a section-by-section analysis of those provisions" which he "believe[d would] be helpful to those who wish[ed] to know the intent of the drafters of this legislation." 134 Cong. Rec. S17360–02 (daily ed. Nov. 10, 1988) (statement of Sen. Biden). According to his statement, the congressional intent regarding the amendment to § 924(g) is:

> Section 7056 [which inserted the language "committed on occasions different from one another"] clarifies the armed career criminal statute, 18 U.S.C. 924(e), by inserting language describing the requisite type of prior convictions that trigger the law's mandatory minimum sentencing provisions. Presently, § 924(e) provides that a person found in possession of a firearm shall be sentenced to a mandatory minimum prison term of not less than fifteen years if such person "has three previous convictions ... for a violent felony or a serious drug offense" (as those terms are defined in the law). Recently, a court of appeals held that the "three previous convictions" requirement was met by a convic-

tion on six counts for armed robbery in New York State in which the defendant was convicted for having robbed six different people at a restaurant at the same time. *United States v. Petty,* 798 F.2d 1157 (8th Cir.1986).

> On petition for a writ of certorari [sic], the Solicitor General on behalf of the United States confessed error, pointing out that, while the armed career criminal statute lacked descriptive language found in other similar federal statutes to the effect that the convictions be for "offenses committed on occasions different from one another", *see* 18 U.S.C. 3575(e)(1) [relating to "Increased sentence for dangerous special offenders", repealed on Oct. 12, 1984], 21 U.S.C. 849(e)(1) [relating to "Dangerous special drug offender sentencing" repealed on Oct. 12, 1984], the legislative history nevertheless made clear that a similar interpretation was intended here. The Supreme Court reversed and remanded the case to the court of appeals for consideration of the Solicitor General's views.

> The proposed amendment clarifies the armed career criminal statute to reflect the Solicitor General's construction and to bring the statute in conformity with the other enhanced penalty provisions cited above. Under the amendment, the three previous convictions would have to be for offenses "committed [sic] occasions different from one another". Thus, a single multi-count conviction could still qualify where the counts related to crimes committed on different occasions, but a robbery of multiple victims simultaneously (as in *Petty* ) would count as only one conviction. This interpretation plainly expresses that concept of what is meant by a "career criminal", that is, a person who over the course of time commits three or more of the enumerated kinds of felonies and is convicted therefor. It is appropriate to clarify the statute in this regard, both to avoid future litigation and to insure that its rigorous sentencing provisions apply only as intended in cases meriting such strict punishment.

Because Congress intended "to reflect the Solicitor General's construction" of the

ACCA when it added the language "committed on occasions different from one another," Congressional intent may thus be discovered in the Solicitor General's brief filed on April 13, 1987 before the Supreme Court in *Petty v. United States,* [481 U.S. 1034, 107 S.Ct. 1968, 95 L.Ed.2d 810 (1987)] ("*Petty* brief").

In his brief, the Solicitor General framed the issue on when the enhanced sentencing provision should apply as "whether Congress intended that convictions on multiple robbery counts ·arising from a single criminal episode should be treated as multiple 'previous convictions * * * for robbery....'" *Petty* Brief at 4–5. He looked at the other statutes which provide for enhanced penalties (referred to by Senator Biden) and concluded that "the legislative history of the Armed Career Criminal Act of 1984 makes it appear that both Congress and those supporting the legislation, including the Department of Justice, did not intend that the penalty provision [of the ACCA] would apply more broadly than in the case of the other federal enhanced penalty statutes." *Id.* at 5–6. The Solicitor General noted that two predecessor bills to the ACCA included similar language but only required two previous convictions rather than the three ultimately required by the ACCA. *Id.* at 6. The Solicitor General stated that two relevant Senate reports:

> strongly suggest that the legislators intended that prior convictions would be based on multiple criminal episodes that were distinct in time.... [E]ach Report provided, in identical language, that "[t]he bill applies to any person who participates in an armed robbery or burglary if that person has been convicted of robbery or burglary *on two or more occasions in the past.*"

*Id.* at 6 (quoting S.Rep. No. 98–190, at 10 (1983) (emphasis in Brief); S.Rep. No. 97–585, at 9 (1982) (emphasis in Brief)). The Solicitor General also pointed to the references throughout the floor debates and legislative reports to "career criminals," "repeat offenders," "habitual offenders," "recidivists," "revolving door" offenders, "three time loser," "third-time offender," and other similar language as supporting his position that Congress did not intend "*to count previous convictions on multiple felony counts arising from a single criminal episode as multiple 'previous convictions.'*" *Petty* Brief at 7 (emphasis added).

As stated by then-Assistant Attorney General Stephen S. Trott, armed career criminals are: "people who have demonstrated, by virtue of their definition, that locking them up and letting them go doesn't do any good. They go on again, you lock them up, you let them go, it doesn't do any good, they are back for a third time. At that juncture we should say, 'That's it; time out; it is all over. We, as responsible people, will never give you the opportunity to do this again.'" *Id.* at 8 (quoting ACCA, Hearing Before the Subcomm. on Crime of the House Comm. on the Judiciary, 98th Cong., 2d Sess. at 64 (1984)). The Solicitor General concluded that "the court of appeals [in *Petty* ] was in error in construing the statute to reach multiple felony convictions arising out of a single criminal episode." *Id.* at 10.

Thus, the ACCA was amended to prevent the application of an enhanced sentence to a defendant who committed simultaneous crimes, regardless of how many convictions resulted from those actions. Congress intended for the enhanced sentence to be applied when a defendant was guilty of committing multiple crimes that took place over a period of time. Clearly, Congress meant for this provision to reach career criminals who have shown that they cannot be rehabilitated.

B. The Circuits Are Split On The Meaning Of "Occasions Different From One Another"

The leading case in our circuit on the interpretation of 18 U.S.C. § 924(e) is *United States v. Antonie,* 953 F.2d 496 (9th Cir. 1991). In *Antonie,* the court found that two robberies, committed forty minutes apart and in two different cities against different victims, were "two separate and distinct criminal episodes." *Id.* at 499. Consequently, they qualified as crimes "committed on occasions different from one another." *See id.* As we said in *Antonie,* "[i]t is clear that Congress intended to deal harshly with persons who repeatedly commit violent criminal acts.... The Act was promulgated to pun-

ish habitual offenders who were found to be disproportionately responsible for violent crimes." *Id.*

Although the fact pattern before us is different from that in *Antonie* and has not been addressed by our court, other circuits have confronted similar fact patterns with differing results. In *United States v. Tisdale*, 921 F.2d 1095, 1099 (10th Cir.1990), the Tenth Circuit upheld a sentence enhancement for a defendant who had broken into a shopping mall and then burglarized three separate businesses. *See id.* at 1098. The court found that the defendant had committed separate crimes thus triggering enhancement because "[a]fter the defendant 'successfully completed' burglarizing one business, he was free to leave. The fact that he chose, instead, to burglarize another business is evidence of his intent to engage in a separate criminal episode." *Id.* at 1099.

In *United States v. Hudspeth*, 42 F.3d 1015, 1021 (7th Cir.1994), the Seventh Circuit held that a defendant who went to a strip mall and burglarized three separate businesses qualified for a sentence enhancement. There, the court found that the defendant had "committed three distinct burglaries against three separate victims (the owners of three distinct business enterprises), in three separate locations over the course of more than thirty minutes...." *Id.* Reasoning that the burglaries were sequential rather than simultaneous, the court stated that "it is physically impossible for one person to commit three burglaries simultaneously at three different locations." *Id.*

In *United States v. Murphy*, 107 F.3d 1199 (6th Cir.1997), the Sixth Circuit determined that two convictions for armed robberies of two residences in a duplex did not constitute crimes "committed on occasions different from one another." There, the defendant and accomplices had robbed the occupant of the first residence and then, with defendant remaining in the first residence to prevent the occupant from calling the police, his accomplices entered the adjoining residence and robbed the second victim. *Id.* at 1208. According to the court, the defendant had "engaged in only one criminal episode in this case, despite the robbery of two separate

residences." *Id.* at 1210. The court stated that "[b]ecause Congress intended to punish recidivists, the predicate conduct must amount to separate and distinct transactions in some definable sense." *Id.* The Sixth Circuit concluded that "there exists no principled way of distinguishing between the end of the first burglary and the beginning of the second." *Id.*

## C.  McElyea's Burglaries Arose Out of A Single Criminal Episode

The Sixth Circuit's reasoning in *Murphy* follows our understanding of the intent of Congress. The record before us does not contain any information regarding the amount of time McElyea spent in each store or whether he stayed in one store while his accomplice entered the other store. Consequently, we cannot say that the burglaries committed by McElyea were "separate and distinct criminal episodes". Rather, we hold McElyea's acts were part of one criminal episode.

McElyea committed two identical crimes in basically the same location within a short time period. He does not meet the profile of a career criminal envisioned by Congress. Consequently, we find that McElyea's 1980 burglaries were not "committed on occasions different from one another" and the district court erred in enhancing McElyea's sentence.

The conviction is AFFIRMED. The sentence is VACATED and the matter REMANDED for resentencing in accordance with this opinion.

TROTT, Circuit Judge, Concurring and Dissenting,

Although I agree with my colleagues that McElyea's civil rights had not been restored and that the jury instruction issue he brings to us has no merit, I regretfully disagree with their application to him of the Armed Career Criminal Act. I do so because I believe that the Tenth Circuit's interpretation in *United States v. Tisdale*, 921 F.2d 1095 (10th Cir.1990) of the phrase "occasions different from one another" is correct, the combative and irrelevant testimony of an ag-

gressive assistant attorney general notwithstanding. The Tenth Circuit said,

> We find the trial court's reasoning persuasive. After the defendant "successfully completed" burglarizing one business, he was free to leave. The fact that he chose, instead, to burglarize another business is evidence of his intent to engage in a separate criminal episode. Moreover, unlike Petty, the defendant's burglaries did not occur at the same location. The record shows that although defendant entered one shopping mall he had to physically break and enter three separate structures. The fact each incident occurred inside one enclosed structure does not alter our conclusion that the crimes were committed at different locations. Thus we find that the trial court properly enhanced the defendant's penalty under § 924(e)(1).

*Id.* at 1009.

We reviewed this very analysis in *United States v. Antonie*, 953 F.2d at 496 (9th Cir. 1991). At that time, we said about *Tisdale* that "[w]e are not persuaded that ... we should disagree with our sister circuits' applications of [§ 924(e), as amended]." *Id.* at 499. Nevertheless, this panel opts seven years later to disagree with *Tisdale* and to aggravate an intercircuit conflict. I decline to sign on to what I respectfully consider to be a mistake with respect to the intent and reach of the plain language of the Armed Career Criminal Act. I can only hope that the cases decided in reliance on our statements about *Tisdale* in *Antonie* are not damaged by our about-face.