NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued June12, 2007
Decided June 28, 2007

**Before**

Hon. ILANA DIAMOND ROVNER, *Circuit Judge*

Hon. DIANE P. WOOD, *Circuit Judge*

Hon. DIANE S. SYKES, *Circuit Judge*

No. 06-3836

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | Appeal from the United States District Court for the Western District of Wisconsin |
| *v.* | No. 06-CR-0035-C |
| BRIAN A. HALE, *Defendant-Appellant.* | Barbara B. Crabb, *Chief Judge.* |

**O R D E R**

Brian Hale pleaded guilty to being a felon in possession of ammunition, and the district court sentenced him as an armed career criminal after determining that he had been convicted of three prior violent felonies. Two of those prior felonies were robberies that occurred on the same day, but involved different victims, different stores, and different weapons. Hale argues that those robberies should not constitute separate offenses for purposes of sentencing him as an armed career criminal. We affirm.

In December 2005 Hale, a convicted felon, led police on a short, high-speed chase through Madison, Wisconsin before crashing the stolen car he had been driving. During an inventory search of the car, police found a suitcase containing

nine rounds of 9mm ammunition, two rounds of 12-gauge ammunition, and three rounds of 10-gauge ammunition. Hale admitted that the ammunition belonged to him, and later pleaded guilty to being a felon in possession of ammunition. *See* 18 U.S.C. § 922(g)(1).

At sentencing, the district court determined that Hale qualified to be sentenced as an armed career criminal under 18 U.S.C. § 924(e), because he had been convicted of three violent felonies in the past. One of the qualifying felony convictions stemmed from a violent 1994 robbery in which Hale—armed with a 12-gauge shotgun—kicked in the front door of a home in South Carolina, performed oral sex on a minor victim, locked a second victim in the bathroom, and stabbed a third victim in the neck and shoulder before stealing several items from the home. Hale pleaded guilty to assault and battery with intent to kill.

The other two qualifying convictions—which Hale argues in this appeal should have counted as only one—stem from a crime spree during which Hale robbed two different stores. On October 17, 1990, Hale entered a "VS" store, displayed a gun, and announced a "stick up" before fleeing with a bag of cash. Shortly thereafter on the same day (the record does not state precisely how much later), he stole $400 from a restaurant using a different gun, which he fired as he fled. Hale pleaded guilty to both armed robberies and was convicted of two violent felonies. (*Id.*)

As an armed career criminal, Hale was subject to a 15-year mandatory minimum sentence, which raised the bottom of his guidelines range from 151 months' to 180 months' imprisonment. The district court accepted the recommendation in Hale's presentence report (to which there were no objections) and sentenced Hale to the statutory mandatory minimum of 180 months.

On appeal Hale argues that the district court erred when it sentenced him as an armed career criminal because, he insists, his two robbery convictions should have been considered only one for purposes of the Armed Career Criminal Act (ACCA). Hale concedes that the district court "followed Seventh Circuit law"—specifically the majority decision in *United States v. Hudspeth*, 42 F.3d 1015 (7th Cir. 1994) (*en banc*), *cert. denied*, 515 U.S. 1105 (1995), and its progeny—when it determined that his same-day robberies involving different victims, different stores, and different weapons at different times constituted separate violent felonies. The *Hudspeth* majority held that the key inquiry in determining whether multiple crimes were should be considered distinct crimes under the ACCA was whether they were committed sequentially or simultaneously. *Hudspeth*, 42 F.3d at 1021. The *Hudspeth* dissent referred to this as the "bright-line" approach. Hale urges us, however, to reject that approach and instead follow four other circuits and the *Hudspeth* dissenters by using a "case-by-case" approach to determine whether the ACCA will apply to crimes committed during a single crime spree. (*Id.*) Because

Hale did not raise this issue in the district court, we will review only for plain error. *United States v. Olano*, 507 U.S. 725, 732 (1993); *United States v. Schlifer*, 403 F.3d 849, 853 (7th Cir. 2005).

The ACCA states that anyone who "has three previous convictions . . . for a violent felony or a serious drug offense, or both, committed on occasions different from one another" is an armed career criminal. 18 U.S.C. § 924(e)(1). Although circuit courts have grappled with the meaning of "occasions different," a number of circuits, including this one, have concluded that mere temporal or physical proximity is generally insufficient to merge multiple offenses into a single "criminal episode." *See United States v. Pope*, 132 F.3d 684, 690-91 (11th Cir. 1998) (collecting cases); *United States v. Schieman*, 894 F.2d 909, 910, 913 (7th Cir. 1990). We have explained that the test for whether crimes are distinct for purposes of sentencing under the ACCA is to determine whether the crimes were committed sequentially or simultaneously. *Hudspeth*, 42 F.3d at 1021. An individual who has an opportunity to withdraw from his criminal activity, but who chooses to commit additional crimes, we have reasoned, should be punished more harshly than an individual who commits simultaneous crimes and "has no opportunity to turn back and abandon his criminal conduct." *Id.* Thus in *Hudspeth*, a majority of this court held that the defendants' unlawful entry into three different businesses in the same strip mall within 35 minutes constituted separate offenses for purposes of sentencing under the ACCA. *Id.* at 1018-20, 1022.

Although pre-*Hudspeth* cases did not explicitly invoke a "bright-line" approach to evaluating whether crimes were committed on separate occasions, this circuit and others had already recognized that sequential crimes occurring within a short time of one another could constitute distinct crimes under the ACCA. *See United States v. Williams*, 68 F.3d 168, 169, 171 (7th Cir. 1993) (holding that kidnapping of two victims and sexual assault of one victim constituted separate offenses for purposes of armed career criminal enhancement); *Schieman*, 894 F.2d at 910, 913 (recognizing separate crimes for purposes of ACCA where a defendant committed a burglary and knocked approaching police officer to ground three blocks away before fleeing); *see also, e.g., United States v. Brady*, 988 F.2d 664, 666, 669 (6th Cir. 1993), (*en banc*) (holding that two robberies committed against different victims in different locations within span of 45 minutes were separate offenses); *United States v. Antonie*, 953 F.2d 496, 499 (9th Cir. 1991) (holding that two armed robberies that occurred within 40 minutes of each other but involved different places and different victims constituted separate offenses); *United States v. Tisdale*, 921 F.2d 1095, 1099 (10th Cir. 1990) (holding that burglaries of three separate stores within same shopping mall on same day constituted distinct offenses); *United States v. Washington*, 898 F.2d 439, 442 (5th Cir. 1990) (holding that successive robberies of same store clerk at same store by same defendant within two hours constituted separate crimes).

The dissenters in *Hudspeth* argued that the majority's "bright-line" approach was too strict; they favored a case-by-case inquiry that would allow a more measured evaluation of factors such as time and distance that would "identify and segregate the true recidivist." *Hudspeth*, 42 F.3d at 1035 (Ripple, J., concurring in part and dissenting in part). They also viewed the majority's decision as out of line with this circuit's cases endorsing a fact-specific inquiry to determine whether multiple crimes committed within a short period of time reflected "distinct aggressions," and thus were "separate and distinct criminal episodes" under the ACCA. *See United States v. Gondinez*, 998 F.2d 471, 473 (7th Cir. 1993); *Schieman*, 894 F.2d at 913. Hale notes that four other circuits have since supported the *Hudspeth* dissent's more calculated, fact-specific inquiry over the majority's "bright-line" approach, and thus urges us to overturn our majority decision in *Hudspeth*.

In support of his argument, Hale cites a case from each of the First, Fifth, Sixth and Ninth Circuits. *United States v. Fuller*, 453 F.3d 274 (5th Cir. 2006); *United States v. Stearns*, 387 F.3d 104 (1st Cir. 2004)*; United States v. McElyea*, 158 F.3d 1016 (9th Cir. 1998); and *United States v. Murphy*, 107 F.3d 1199 (6th Cir. 1997). Two of these cases, however, do not actually support Hale's argument. First, the Fifth Circuit's decision in *Fuller*, like the majority in *Hudspeth*, held that the "occasions different" inquiry turns on whether the crimes in question occurred sequentially or simultaneously. *United States v. Fuller*, 453 F.3d at 278-79; *see Hudspeth*, 42 F.3d at 1021. Second, the Sixth Circuit's decision in *Murphy* held simply that the defendant could not be convicted of two separate burglaries that occurred simultaneously because, though he had helped plan both burglaries, he was physically present at only one. *United States v. Murphy*, 107 F.3d 1199, 1210 (6th Cir. 1997).

Moreover, even if Hale is correct that the First Circuit and Ninth Circuit decisions—*Stearns* and *McElyea*—rejected *Hudspeth*'s "bright-line" approach in favor of a case-by-case approach, this circuit has continued to follow the majority's decision, *see United States v. Morris*, 293 F.3d 1010, 1013-14 (7th Cir. 2002) (explaining that two shootings by defendant, "although close in time and location, involved distinct criminal aggressions from which he had an opportunity to cease and withdraw."); *United States v. Cardenas*, 217 F.3d 491, 492 (7th Cir. 2000) (concluding that two drug sales within 45 minutes to the same person constituted separate offenses for purposes of armed career criminal enhancement), and there has been no Supreme Court decision or new statute that has overruled or undermined *Hudspeth* or its progeny. Thus, unless and until Congress changes or repeals the ACCA, or the Supreme Court determines that our interpretation of the ACCA is incorrect, we will not overturn our precedent simply because Hale has suggested it. *See Santos v. United States*, 461 F.3d 886, 891 (7th Cir. 2006) (requiring a "compelling reason to overturn circuit precedent," such as Supreme Court mandate or new statute).

Finally, even if we were to employ a case-by-case approach, as Hale advocates, the facts of his case do not suggest that his two robberies could be considered one. Although both occurred on the same day, Hale robbed one victim in a retail store using one gun, and then some unspecified time later, robbed a different victim in a restaurant using a different gun. This was not a sequential string of robberies in a single strip mall that involved a "continuous course of extended criminal conduct," *see McElyea*, 158 F.3d at 1018, 1021 (9th Cir. 1998) (holding that burglary of two stores in strip mall should count as only one crime under ACCA where record not clear on whether defendant entered both stores), but was instead two separate crimes separated by an interval during which Hale had time to contemplate whether to commit the second robbery. *See Stearns*, 387 F.3d at 108-09 (endorsing case-by-case approach to "occasions" inquiry, and concluding that defendant committed two separate crimes where he robbed the same victim twice, but had time between the two robberies to consider whether to commit the second crime).

Accordingly, we AFFIRM the decision of the district court.