In the

# United States Court of Appeals

### For the Seventh Circuit

No. 11-3550

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JERMAINE SIMS,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 10 CR 619—**Charles R. Norgle**, *Judge.*

ARGUED APRIL 19, 2012—DECIDED JUNE 25, 2012

Before EASTERBROOK, *Chief Judge*, and FLAUM and
WOOD, *Circuit Judges.*

WOOD, *Circuit Judge.* Jermaine Sims pleaded guilty to
possessing a firearm as a convicted felon, in violation of
18 U.S.C. § 922(g). The district court sentenced Sims to
180 months' imprisonment after it determined that
three of Sims's previous convictions triggered the Armed
Career Criminal Act's (ACCA) 15-year mandatory mini-
mum.

Sims appeals only his sentence. He argues that the ACCA sentencing enhancement should not apply to him because two of his three prior convictions—one for selling cocaine and the other for possessing cocaine with intent to deliver—were not committed "on occasions different from one another." 18 U.S.C. § 924(e)(1). Although we can imagine some circumstances in which sales and possession offenses, even if separated by some time, might appropriately be found to have occurred on the same "occasion," that is not the case here. Sims's two offenses were separated by a week. We thus find no error in the district court's determination that the two were "committed on occasions different from one another," 18 U.S.C. § 924(e)(1). That means that the necessary three predicate offenses for ACCA purposes are present, and that Sims's sentence must be affirmed.

**I**

Under ACCA, a person convicted of being a felon in possession of a firearm who has "three previous convictions . . . for a violent felony or a serious drug offense, or both, committed on occasions different from one another" is subject to a mandatory prison term of "not less than fifteen years." 18 U.S.C. § 924(e)(1). The district court's application of the statute in this case turns on its determination that two of Sims's prior drug convictions were "committed on occasions different from one another." (Sims concedes that his third prior conviction, for aggravated discharge of a weapon in 1997, was properly counted.)

The two drug convictions in question occurred more than 12 years ago. On January 11, 2000, Sims sold four grams of cocaine to an undercover Illinois police officer. The officer did not arrest Sims right away, as he might have done. Instead, he obtained a search warrant for Sims's residence. A week later, on January 18, the police executed the warrant. At that time, they arrested Sims with four rocks of crack cocaine on his person. Sims was charged with a variety of drug offenses and ultimately pleaded guilty in Illinois state court to unlawful delivery of less than 15 grams of cocaine (the January 11 sale) and unlawful possession of less than 15 grams of cocaine with intent to deliver (the January 18 possession).

The only issue Sims raises on appeal is whether those two offenses were correctly found to be "committed on occasions different from one another." If so, then his sentence stands; if not, he is entitled to resentencing. The key question is whether the offenses were the result of "separate and distinct criminal episode[s]." *United States v. Hudspeth*, 42 F.3d 1015, 1019 (7th Cir. 1994) (*en banc*). In *Hudspeth* we held that separate and distinct criminal episodes can occur even when one crime comes "hard on the heels of another." *Id.* at 1020. Hudspeth had committed three burglaries in rapid succession against adjoining stores in the same strip mall, but we held that each burglary counted as a distinct criminal episode. Hudspeth's single crime spree was thus sufficient to trigger the ACCA enhancement. What matters is "not whether one crime overlaps another but whether the crimes reflect *distinct*

*aggressions.*" *Id.* at 1020 (quoting *United States v. Godinez*, 998 F.2d 471, 473 (7th Cir. 1993)) (emphasis by *Hudspeth*).

Sims relies on this language to argue that his possession offense is not separate and distinct from his sales offense because possession itself is not a distinct aggression. Setting aside whatever aggression may have accompanied the initial act of acquiring drugs, continued possession of drugs, he argues, is a passive offense. Sims speculates that had the police arrested him at the moment of the initial drug sale and found the cocaine on his person, ACCA would not apply. The result should be no different, he concludes, simply because the police waited a week to arrest him.

The problem with Sims's argument is that it operates at too general a level. It is true that possession is typically a passive offense. *Cf. United States v. Archer*, 531 F.3d 1347, 1351 (11th Cir. 2008) ("The act of possession does not, without more, . . . involve any aggressive or violent behavior."). Had Sims been arrested at the moment of the drug sale and been convicted of possession with intent to sell as well as the sale, the two convictions could not be treated as separate offenses for ACCA purposes. See *Hudspeth*, 42 F.3d at 1021 n.10 (explaining that "a single drug sale" that results in multiple charges, including sale and possession with intent to sell, should not trigger the ACCA's sentencing enhancement).

But that is not what happened. Sims sold drugs on January 11. A full week later, he was caught in possession of a quantity of crack consistent with an intent to sell. Courts have reasoned that two drug sales, even those

that occur sequentially, can be distinct offenses under ACCA. See, *e.g.*, *United States v. Cardenas*, 217 F.3d 491, 492 (7th Cir. 2000); *United States v. Van*, 543 F.3d 963, 966 (8th Cir. 2008); *United States v. Johnson*, 130 F.3d 1420, 1430-31 (10th Cir. 1997); *United States v. Letterlough*, 63 F.3d 332 (4th Cir. 1995); *United States v. Maxey*, 989 F.2d 303, 306 (9th Cir. 1993).

Sims argues that those cases do not control because he was convicted of a sale and a possession offense, not two sales. Descriptively, he is correct. But in order for us to conclude that his two crimes must be collapsed into one "occasion," we would at a minimum have to be satisfied that Sims's possession offense was based on the same drug stash from which he drew the product that he sold. Although it is possible that the drugs found on January 18 were already in his possession as early as January 11, it is at least equally likely that they were not. For all we know, Sims sold the last of his January 11 drug supply to the officer that day and then acquired additional cocaine before his arrest on January 18. Those two offenses would be separate and distinct. Once the government has established by a preponderance of the evidence that Sims has three prior felonies under ACCA, the burden shifts to the defendant to "prove by a preponderance of the evidence that a conviction cannot be used under § 924(e)(1)." *United States v. Vitrano*, 405 F.3d 506, 509 (7th Cir. 2005). On this record, the district court reasonably concluded that Sims failed to meet that burden. It was therefore appropriate for the court to treat the two as separate offenses.

## II

Sims urges that the application of ACCA under the circumstances of his case is arbitrary, and we acknowledge that he is receiving a hefty sentencing enhancement because of these two relatively minor drug offenses. In his view, his sentence is driven not by his own behavior, but by the choice of the police not to arrest him at the moment of the initial sale that triggered ACCA's 15-year minimum sentence for him. Naturally, there is another way to look at things: it was Sims's choice to engage in drug trafficking to begin with, coupled with his choice to plead guilty to the possession offense on January 18, that has landed him in this position, even if he did not foresee just how harsh the fallout was likely to be. Moreover, it seems unlikely to us that the police will strategically arrest drug offenders a week or more after their initial offenses, hoping that 12 years hence the same people will face federal gun charges and wind up with a long federal sentence.

We decline the invitations of both parties to establish some kind of hard and fast rule about how much time must pass between a sales offense and a possession offense before the two are considered to be committed on different occasions. A week, as we have here, is likely to be enough, but we do not rule out the possibility that a defendant in a future case could point to evidence indicating that only one episode is unfolding. We also decline to hold, as the government has requested, that the passage of a short period of time will always justify a finding of two "occasions." In the government's view,

if the police had waited just an hour to arrest Sims, rather than a week, the result should be the same because Sims would have had an "opportunity . . . to withdraw from his criminal activity," *Hudspeth*, 42 F.3d at 1021, by throwing away whatever drugs he possessed. But "opportunity to withdraw," though important, is not the only consideration. It is merely one factor that we consider, and it will often provide strong support for finding the separate occasions that are necessary for enhanced penalties under ACCA. As we commented in *Hudspeth*, "[a] defendant who has the opportunity to cease and desist or withdraw from his criminal activity at any time, but who chooses to commit additional crimes, deserves harsher punishment than the criminal who commits multiple crimes simultaneously." *Id.*

This rationale may have its limits in the case of a drug dealer who sells drugs at time A but is not arrested until time B, just an hour or two later. If the police have been standing around questioning people, securing the scene, or otherwise handling the situation as a single event, then it is likely to be a single occasion for ACCA purposes. Application of ACCA should turn on choices made by the defendant to commit additional crimes, not choices made by the police about timing of arrests. Were we confronted here with a case like *United States v. Blackwood*, 913 F.2d 139, 145 (4th Cir. 1990), on which Sims relies, we might reach the same result as that court did. In *Blackwood*, a defendant had two past convictions, one for possession of drugs in a truck and the other for possession two hours later of drugs in

a hotel room. The Fourth Circuit concluded that the two convictions were "no more than two components of a single act of criminality" and so should not be counted separately for sentencing purposes under a statute similar to the ACCA. *Id.* But here a week, not two hours, separated the two offenses. As we have already explained, Sims has not demonstrated why that lengthy period is not enough to support the finding of two separate occasions.

*   *   *

  We AFFIRM the judgment of the district court.