In the

# United States Court of Appeals

### For the Seventh Circuit

No. 11-2507

JEFFREY D. KIRKLAND,

*Petitioner-Appellant*,

*v.*

UNITED STATES OF AMERICA,

*Respondent-Appellee*.

Appeal from the United States District Court
for the Northern District of Indiana, South Bend Division.
No. 3:09-CV-335—**Jon E. DeGuilio**, *Judge*.

ARGUED JANUARY 20, 2012—DECIDED JULY 24, 2012

Before FLAUM and ROVNER, *Circuit Judges*, and
CASTILLO, *District Judge*.[*]

CASTILLO, *District Judge*. Jeffrey Kirkland was con-
victed of unlawful possession of a firearm by a felon, and
based on a finding that he had five "violent felony"
convictions, including two drunk driving offenses, the

---

[*] The Honorable Ruben Castillo, United States District Court
for the Northern District of Illinois, sitting by designation.

district court sentenced him as an armed career criminal pursuant to the Armed Career Criminal Act, 18 U.S.C. § 924(e) ("ACCA"). After the Supreme Court determined that drunk driving is not a "violent felony" as the term is defined in the ACCA, *Begay v. United States*, 553 U.S. 137, 128 S.Ct. 1581, 170 L.Ed.2d 490 (2008), Kirkland filed a petition for relief under 28 U.S.C. § 2255. The district court denied Kirkland's petition. On appeal, we vacated that judgment and remanded the case with directions for the district court to determine whether Kirkland still qualified as a career criminal absent the two convictions for drunk driving. On remand, the district court concluded that an enhancement of Kirkland's sentence under the ACCA was still appropriate based on his three remaining convictions for violent felonies.

Kirkland appeals on two grounds: first, that the district court erred in determining that two of Kirkland's "violent felony" convictions that arose from events on a single day constituted separate predicate offenses under the ACCA, and second, that the district court erred in not admitting Kirkland's testimony and affidavit at his resentencing hearing. We reverse.[1]

---

[1] This opinion has been circulated to the full court pursuant to Circuit Rule 40(e). No judge in active service requested to hear this case *en banc*.

## I. BACKGROUND

On August 15, 2006, a jury found Kirkland guilty of unlawful possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1). At sentencing, the district court adopted the findings of the presentence investigation report ("PSR"), which indicated that Kirkland's criminal history included five "violent felony" convictions: a 1984 conviction for burglary; a 1985 conviction for burglary; a 1985 conviction for aggravated robbery; a 2001 conviction for operating while intoxicated; and a 2003 conviction for operating while intoxicated. Based on the PSR's findings, the district court concluded that Kirkland qualified as an armed career criminal under the ACCA, which increases the penalty for possession of a firearm by a felon when a defendant has three predicate convictions for "violent felon[ies]" as defined in the ACCA that were "committed on occasions different from one another." 18 U.S.C. § 924(e)(1). The district court sentenced Kirkland to the mandatory fifteen-year minimum under the ACCA.

In 2008, the Supreme Court held in *Begay* that the felony offense of driving under the influence is not a "violent felony" within the meaning of the ACCA. 553 U.S. at 148, 128 S.Ct. 1581. Kirkland subsequently filed a § 2255 petition challenging his sentence, which the district court denied. On appeal, we remanded the case to the district court for further consideration in light of our holding in *Welch v. United States*, 604 F.3d 408 (7th Cir. 2010), that *Begay* applies retroactively.

On remand, the district court considered whether Kirkland qualified as an armed career criminal based on

his three remaining felony convictions—the 1984 bur-
glary conviction and the 1985 burglary and aggravated
robbery convictions. The government maintained that
Kirkland's enhanced sentence was valid because the
three remaining convictions were violent felonies as
defined by the ACCA. Kirkland conceded that all three
convictions were violent felonies, but argued that the
1985 convictions could not serve as separate predicate
felonies under the ACCA because they were not com-
mitted on "occasions different from one another," as
required by § 924(e)(1).

The district court conducted a resentencing hearing to
resolve this disputed issue. At the hearing, the parties
submitted the charging documents, the judgments, and
the plea questionnaires from the 1985 convictions. The
two charging documents indicate that both the burglary
and the robbery occurred on February 6, 1985. The
first document, an information for cause number "C 85-
104," charges Kirkland, Johnny Henry Yearley, and Karen
Sue Foster with burglary and second degree battery.
The information states that Kirkland, Yearley, and Foster
committed the burglary in the home of Charles Gabbard,
and that Gabbard was the victim of the battery.[2] It does

---

[2]  Specifically, the "C 85-104" information states that:

> Johnny Henry Yearley, Jeffrey Dean Kirkland & Karen Sue
> Foster in said Washington County, State of Arkansas, on or
> about the 6th day of February, 1985, did unlawfully,
> feloniously and with the purpose of committing an offense
>                                                    (continued...)

not provide a time for the offense. The second informa-
tion, for cause number "C 85-105," charges the same
three defendants with aggravated robbery and theft of
property, and indicates that the defendants robbed an
unnamed individual and stole cash and pizza that was
property of "Dominoe's [sic] Pizza."[3] The information
for cause number "C 85-105" does not indicate the
time or location of the robbery and theft.

---

[2] (...continued)

punishable by imprisonment, enter or remain in the resi-
dence of Charles Gabbard, an occupiable structure in
violation of Ark. Stats. Ann. § 41-2002; and,

did unlawfully, feloniously and with the purpose of causing
physical injury to another person, cause physical injury
to Charles Gabbard, in violation of Ark. Stats. Ann. § 41-
1602.

[3] The "C 85-105" information states that:

Johnny Henry Yearley, Jeffrey Dean Kirkland & Karen Sue
Foster in said Washington County, State of Arkansas, on or
about the 6th day of February, 1985, did unlawfully,
feloniously and with the purpose of committing a theft, or
resisting apprehension immediately thereafter, employ or
threaten to immediately employ physical force upon
another person, while armed with a deadly weapon, or
representation that he was so armed, in violation of
Ark. Stats. Ann. § 41-2102; and,

did unlawfully and with the purpose of depriving the
owner of its property, knowingly take or exercise unautho-
rized control over cash and pizza, such being the property
of Dominoe's [sic] Pizza, in violation of Ark. Stats. Ann.
§ 41-2203.

The judgments and plea questionnaires for the 1985 offenses that were submitted to the district court do not provide further information regarding the offenses. The two judgments are identical except for the cause numbers, the crimes listed, and the sentencing information. The two plea questionnaires are also the same aside from the cause numbers listed at the top of the page.[4] Despite the best efforts of the probation officer, no additional records for the 1985 offenses were located.

At the hearing, the parties agreed that under *Shepard v. United States*, 544 U.S. 13, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005), the district court could only consider the charging documents, the judgments, and the plea questionnaires from the 1985 convictions in determining whether Kirkland's convictions were for offenses that occurred on different occasions. Based on this record, the government conceded that it was possible that the two offenses occurred simultaneously given that Kirkland was convicted of the offenses with two co-defendants, and there was no information regarding the time of either offense or the location of the robbery to indicate otherwise. Nevertheless, the government argued that the ACCA enhancement was appropriate because Kirkland could not show that the offenses occurred on the same occasion. Kirkland, in turn, agreed

---

[4] In fact, the plea questionnaires appear to be copies of the same document with one cause number scratched out and replaced by the other cause number. Both plea questionnaires therefore list all four offenses—aggravated robbery, theft of property, burglary, and battery.

that the ambiguities in the record created a situation in which, at best, the district court was left with "a guess" as to what occurred if it only considered *Shepard*-approved documents. He accordingly offered an affidavit and testimony regarding the events that led to the 1985 convictions in an effort to show that the offenses occurred on the same occasion, even though he conceded that such evidence was not contemplated by *Shepard*.

Before determining whether the burglary and robbery convictions resulted from offenses that were committed on separate occasions, the district court concluded that *Shepard* precluded it from considering Kirkland's affidavit or testimony.[5] That left, as the district court put it, a "factually sparse" record relevant to deter-mining whether the offenses were "committed on occa-sions different from one another." In particular, the district court noted that the record lacked information regarding the timing of the offenses and the location of the robbery. The fact that two co-defendants were involved in both offenses further complicated the inquiry as to the sequence of events. Ultimately, the district court concluded that "based on the limited facts available for review," Kirkland could not prove by a preponderance of the evidence that the offenses

---

[5] The government also submitted a Department of Correction admissions record, but the district court declined to consider it. The district court also declined to consider portions of the PSR that were not based on *Shepard*-approved sources.

occurred on a single occasion. Accordingly, the district court denied Kirkland's § 2255 petition because the 1985 convictions for burglary and robbery, combined with the undisputed 1984 conviction for burglary, served as the necessary predicates for an enhancement under the ACCA. In an alternative holding, the district court considered Kirkland's testimony and determined that it did not alter its conclusion that the ACCA enhancement was warranted in this case. Following the district court's granting of a certificate of appealability, Kirkland appealed.

## II.  DISCUSSION

Kirkland challenges the district court's use of his 1985 convictions to enhance his sentence under the ACCA because he contends that the violent felonies were committed on the same occasion. We review *de novo* the district court's application of the ACCA to Kirkland's sentence. *United States v. Foster*, 652 F.3d 776, 792 (7th Cir. 2011) (citing *United States v. Fife*, 624 F.3d 441, 445 (7th Cir. 2010)). Any factual findings related to Kirkland's prior convictions, however, are reviewed for clear error. *Id.* (citing *United States v. Aljabari*, 626 F.3d 940, 950 (7th Cir. 2010)).

### A.  *Shepard* **Source Restriction**

Before reaching Kirkland's primary argument on appeal, we first address the preliminary issue of whether the evidentiary restrictions set forth in *Shepard v. United*

*States* apply to the "different occasion" inquiry under § 924(e)(1). We agree with the district court that *Shepard* does apply, and though we have indicated as much in prior opinions, *see United States v. Ngo*, 406 F.3d 839, 843 n.1 (7th Cir. 2005), *United States v. Hunter*, 418 Fed. Appx. 490, 494 (7th Cir. 2011), we briefly explain our reasoning in an attempt to clarify this constantly evolving and "not always very logical" area of the law, *United States v. Browning*, 436 F.3d 780, 782 (7th Cir. 2006).

The ACCA provides that anyone who has "three previous convictions . . . for a violent felony or a serious drug offense, or both, committed on occasions different from one another" is an armed career criminal and subject to a fifteen-year mandatory minimum sentence. 18 U.S.C. § 924(e)(1). In *Taylor v. United States*, the Supreme Court addressed how a district court may determine whether a prior conviction qualifies as a "violent felony" as defined under § 924(e)(1). 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990). The defendant in *Taylor* pleaded guilty to possession of a firearm by a felon in violation of § 922(g)(1), and the government sought a sentencing enhancement under § 924(e) based on his criminal history that included burglary convictions. *Id.* at 578-59, 110 S.Ct. 2143. The defendant argued that although "burglary" is one of the "violent felon[ies]" identified in § 924(e)(2)(B), his prior convictions for burglary could not be predicate offenses because they did not involve conduct presenting "a serious potential risk of physical injury to another" as required by

§ 924(e)(2)(B)(ii). *Id.* at 579, 110 S.Ct. 2143.[6] The Court first determined that the "generic" meaning of burglary was the proper definition of "burglary" under § 924(e), meaning that if a defendant's prior conviction involved a crime with the basic elements of "generic burglary," regardless of the label of the conviction, the conviction counts as a predicate offense for purposes of § 924(e). *Id.* at 599, 110 S.Ct. 2143.

The Court next addressed the question of how to determine if a defendant's prior conviction for burglary qualifies as a conviction for "generic burglary" where the state statute under which the defendant is convicted

---

[6]  18 U.S.C. § 924(e) provides:

> (1) In the case of a person who violates section 922(g) . . . and has three previous convictions by any court . . . for a violent felony or a serious drug offense, or both . . . such person shall be fined not more than $25,000 and imprisoned not less than fifteen years.
>
> (2) As used in this subsection— . . .
>
> > (B) the term "violent felony" means any crime punishable by imprisonment for a term exceeding one year . . . that—
> >
> > > (i) has an element the use, attempted use, or threatened use of physical force against the person of another; or
> > >
> > > (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

varies from the "generic definition." *Id.* at 599, 110 S.Ct. 2143. The Court concluded that the plain language of the ACCA, its legislative history, and practical considerations require "a formal categorical approach" to this inquiry that permits the trial court to look only to "the fact of conviction and the statutory definition of the prior offense" and "not to the facts underlying the prior conviction." *Id.* at 600-02, 110 S.Ct. 2143. The Court acknowledged an exception in cases in which the statutory definition of an offense encompasses conduct that would qualify as a "violent felony" and other conduct that would not. *Id.* at 602. In this "narrow range of cases," the district court can look to the charging document and jury instructions to determine if the defendant was "necessarily" convicted of conduct that qualifies as a "violent felony." *Id.*

In *United States v. Hudspeth*, a majority of this court held that the source restriction outlined in *Taylor* for the determination of whether an offense qualifies as a "violent felony" did not apply when deciding whether multiple offenses occurred on one or more "occasions." 42 F.3d 1015, 1018 n.3 (7th Cir. 1994) (*en banc*). The majority reasoned that "[a]s a practical matter, a district court frequently must look beyond the charging papers and judgment of conviction for these documents alone rarely provide the district court with the detailed information necessary (i.e., time, victim, location) to determine whether multiple offenses occurred on one or more 'occasions.'" *Id.* Accordingly, under *Hudspeth*, a district court could rely on documents such as police reports that were not permissible under *Taylor* to examine the

factual underpinnings of a defendant's prior convictions. *Id.*

In 2005, the Supreme Court revisited the issue of what materials a sentencing court may consider in determining the nature of a defendant's prior felony convictions for purposes of § 924(e)(1) in *Shepard*. 544 U.S. at 16, 125 S.Ct. 1254. *Shepard*, like *Taylor*, involved a prior burglary conviction in a state in which the burglary statute covered a broader range of conduct than the "generic burglary" needed for an ACCA enhancement as a "violent felony." The defendant's burglary conviction in *Shepard*, however, resulted from a guilty plea and not a jury trial, and because there were no jury instructions, the government urged the district court to consider police reports and complaint applications in determining whether the defendant's convictions were for "generic burglaries." 544 U.S. at 17-18, 125 S.Ct. 1254. The district court declined to consider this evidence, and did not apply the ACCA enhancement because it "found that the Government had failed to carry its burden to demonstrate that Shepard had pleaded to three generic burglaries." *Id.* at 18-19, 125 S.Ct. 1254. The First Circuit vacated the sentence and remanded for resentencing "[a]fter observing that Shepard never 'seriously disputed' that he did in fact" commit the acts described in the police reports and complaint applications. *Id.* at 19, 125 S.Ct. 1254 (citation omitted).

The Supreme Court reversed. Because there was no reason "to ease away from the *Taylor* conclusion," the Court rejected the government's arguments for a "wider

evidentiary cast" and concluded that a district court may not consider police reports or complaint applications in determining whether a prior burglary conviction that resulted from a guilty plea was a "violent felony." *Id.* at 21-23; 125 S.Ct. 1254. Instead, the Court held, a district court may only examine "the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information." *Id.* at 26, 125 S.Ct. 1254. Like jury instructions in a jury case, or "the details of a generically limited charging document . . . in any sort of case," documents stating the facts to which the defendant admitted in entering the plea will generally inform a later court on the crucial question: "whether the plea had 'necessarily' rested on the fact identifying the burglary as generic." *Id.* at 21, 125 S.Ct. 1254 (citing *Taylor*, 495 U.S. at 602, 110 S.Ct. 2143).

A plurality of the Court in *Shepard* also noted that developments since *Taylor*—particularly *Jones v. United States*, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999), and *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000)—provided further reason to adhere to the limited evidentiary inquiry permitted under *Taylor*. *Id.* at 24, 125 S.Ct. 1254. Specifically, the plurality pointed to the rule imposed in *Jones* and *Apprendi* that "any fact other than a prior conviction sufficient to raise the limit of the possible federal sentence must be found by a jury, in the absence of any waiver of rights by the defendant." *Id.* (citing *Jones*, 526 U.S. at 243 n.6, 119 S.Ct. 1215, and *Apprendi*, 530 U.S. at 490, 120 S.Ct. 2348). While

recognizing the exception to this rule for prior convictions established in *Almendarez-Torres v. United States*, 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998), the plurality concluded that the disputed fact in *Shepard*— whether a prior conviction was for "generic" burglary—was "too removed from the conclusive significance of a prior judicial record, and too much like the findings subject to *Jones* and *Apprendi*, to say that *Almendarez-Torres* clearly authorizes a judge to resolve the dispute." *Id.* at 25, 125 S.Ct. 1254.[7] The Sixth Amendment concerns underpinning *Jones* and *Apprendi* therefore provided further support for limiting "the scope of judicial factfinding on the disputed generic character of a prior plea, just as *Taylor* constrained judicial findings about the generic implications of a jury's verdict." *Id.* at 25-26, 125 S.Ct. 1254.

We addressed the impact of *Shepard* on judicial factfinding regarding the application of the career offender provision of the then-mandatory Sentencing Guidelines in *Ngo*, 406 F.3d at 842. The career offender provision of the Guidelines at the time provided that "[p]rior sentences imposed in unrelated cases are to be counted separately" and "[p]rior sentences imposed in related cases are to be treated as one sentence." *Id.* at 841 (quoting U.S.S.G. § 4A1.2(a)(2)). The district court in *Ngo*

---

[7] This part of the opinion did not command a majority because Justice Thomas, as he explained in his concurrence, wanted to go even further than the plurality and overrule *Almendarez-Torres*. 544 U.S. at 27-28, 125 S.Ct. 1254 (Thomas, J., concurring in part and concurring in the judgment).

sentenced the defendant as a career offender based on two prior armed robbery convictions that it concluded were not related because they were not consolidated for sentencing or part of a common scheme or plan. *Id.* On appeal, the defendant argued that the district court's conclusion that he was a career offender "entailed finding facts beyond the 'fact of prior conviction,' namely, that his prior convictions were not consolidated for sentencing or part of a common scheme or plan," which violated *Almendarez-Torres* as interpreted by *Apprendi* and *Shepard. Id.* at 842. We agreed with the defendant, noting that the *Shepard* plurality's narrowing of the *Almendarez-Torres* exception for prior convictions "suggests that the recidivism exception exempts only those findings traceable to a prior judicial record of 'conclusive significance.'" *Id.* We therefore concluded that the district court's finding that the defendant's crimes were not part of a common scheme or plan, which "was determined by resorting to sources of information without the 'conclusive significance' of a prior judicial record, was not 'clearly authorized' by *Almendarez-Torres*." *Id.* at 842-43. Because this finding was used to increase the defendant's guideline range, his sentence violated the Sixth Amendment. *Id.* at 843; *see also United States v. McGee*, 408 F.3d 966, 988-89 (7th Cir. 2005) (remanding career offender sentence because of sentencing court's possible reliance on a police report to determine that two offenses were not related).[8]

---

[8] Regarding the district court's finding that the defendant's crimes were not consolidated, we concluded that there was no

(continued...)

Relying on *Taylor*, *Shepard*, and *Ngo*, the district court in this case concluded in its thorough and well-reasoned opinion that it was limited to considering "the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information," *Shepard*, 544 U.S. 13 at 26, 125 S.Ct. 1254, for the different occasions inquiry. We agree that the reasoning behind these decisions clearly applies to the determination of whether prior offenses occurred on "occasions different from one another."[9] Indeed, in *Ngo* we noted that while the advisory nature of the Guidelines after *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), resolved the Sixth Amendment implications of judicial factfinding regarding the career offender provision of the Guidelines, "no such cure exists with respect to statutory enhancements—such as [the ACCA]—which mandate higher sentences and leave no discretion to the judge." *Ngo*, 406 F.3d at 843 n.1; *see*

---

[8] (...continued)

Sixth Amendment problem because our precedent already limited the district court to considering sources that have the "conclusive significance of a prior judicial record" as required by *Shepard* when deciding a disputed consolidation question. *Id.*

[9] This conclusion, of course, means that the portion of *Hudspeth* distinguishing *Taylor* and permitting the consideration of police reports for the different occasion inquiry, 42 F.3d at 1019 n.3, is no longer good law.

*also Hunter*, 418 Fed. Appx. at 494 (applying the *Shepard* source restriction to the different occasions inquiry, but also noting that courts may also rely on undisputed sections of a PSR to determine whether prior offenses were committed on different occasions). This conclusion also accords with our sister circuits, many of which have also decided that the *Shepard* source restriction applies to the determination of whether prior offenses occurred on "occasions different from one another" under § 924(e)(1). *See United States v. Thomas*, 572 F.3d 945, 950-51 (D.C. Cir. 2009) (recognizing that the *Shepard* source restriction applies to the different occasions inquiry); *United States v. Thompson*, 421 F.3d 278, 285-86 (4th Cir. 2005) (upholding the district court's reliance on the PSR to find that three burglaries occurred on different occasions where that information was derived from *Shepard*-approved sources); *United States v. Fuller*, 453 F.3d 274, 279-80 (5th Cir. 2006) (applying *Shepard* to the different occasions inquiry and vacating sentence because the *Shepard*-approved documents did not establish that the offenses occurred on different occasions); *United States v. Taylor*, 413 F.3d 1146, 1157-58 (10th Cir. 2006) (vacating a sentence enhanced by the ACCA and remanding because it was unclear whether the district court limited itself to *Shepard*-approved sources in determining that the defendant's prior crimes were committed on different occasions); *United States v. Sneed*, 600 F.3d 1326, 1332-33 (11th Cir. 2010) (vacating an ACCA-enhanced sentence and remanding where the district court relied on police reports, which are not *Shepard*-approved, in determining that the defendant's prior convictions were

committed on different occasions). Accordingly, as the district court properly concluded here, courts may only consider *Shepard*-approved sources in determining whether prior offenses occurred on separate occasions under § 924(e)(1).

## B. Different Occasions Inquiry

We turn now to the primary question on appeal of whether Kirkland's 1985 convictions were for offenses "committed on occasions different from one another" as required by § 924(e)(1). Although we and other circuit courts have grappled with the meaning of "occasions different from one another," the majority of this court set forth a framework for making the determination required by § 924(e)(1) in *Hudspeth*. 42 F.3d at 1019. *Hudspeth* emphasized that the key issue for purposes of the statutory enhancement is not whether the prior offenses are "related," but whether each arose out of a "'separate and distinct criminal episode.'" *Id.* (quoting *United States v. Schieman*, 894 F.2d 909, 911 (7th Cir. 1990)). *Hudspeth* indicated that the primary question relevant to this determination "is simple: were the crimes *simultaneous* or were they *sequential?*" *Id.* at 1021. This means that "one crime hard on the heels of another can be a 'separate and distinct criminal episode[.]'" *United States v. Godinez*, 998 F.2d 471, 472 (7th Cir. 1993); *United States v. Morris*, 293 F.3d 1010, 1014 (7th Cir. 2002). The majority in *Hudspeth* reasoned that an individual who has an opportunity to withdraw from his criminal activity, but who chooses to commit additional crimes, should be punished more harshly

than an individual who commits simultaneous crimes and "has no opportunity to turn back and abandon his criminal conduct." 42 F.3d at 1021. Accordingly, under this inquiry, courts consider the "nature of the crimes, the identities of the victims, and the locations" of the offenses, and whether the "perpetrator had the opportunity to cease and desist from his criminal actions at any time." *Id.* at 1019; *Morris*, 293 F.3d at 1013.

Applying these factors here, we agree with the district court that the "factually sparse" record sheds little light on whether the 1985 offenses occurred on the same occasion. The charging informations for the burglary and robbery establish that Kirkland and his co-defendants committed both offenses on the same day, but there is no information as to the timing or sequence of events. Regarding the location of the offenses, we know the burglary occurred in the residence of Charles Gabbard, but we do not know the location of the robbery. In terms of the victims of the offenses, the information makes clear that Gabbard was the victim of the burglary. For the robbery, the district court found that the victim was a Domino's Pizza delivery person. On appeal, Kirkland argues that this finding was in error because the robbery and theft counts listed in the information for cause number "C 85-105" are separate counts, and "nothing" in the information indicates that the robbery was of a Domino's Pizza delivery person. Instead, Kirkland suggests, the "logical inference" from the evidence is that the victim of the robbery was Gabbard.

We need not decide whether the district court's finding that the unnamed individual identified in the

robbery count was an employee of Domino's Pizza was a permissible inference for the district court to make; even with this finding of fact and the different nature of the offenses, we cannot conclude that the offenses occurred on separate occasions. As the burglary and robbery happened on the same day, Kirkland was charged with co-defendants for both offenses, and the record lacks key information such as the timing and location of the offenses, we do not know if the offenses occurred simultaneously or sequentially. The government conceded at Kirkland's resentencing hearing that Kirkland could have committed one offense while his co-defendants committed the other offense.[10] Nevertheless, the government urges us to affirm the ACCA enhancement despite the ambiguities in the record because once the government provided evidence of three prior "violent felony" convictions, it was Kirkland's burden to prove that the offenses occurred on the same occasion. Given the sparse record, the government argues, Kirkland cannot meet that burden.

It was on this basis that the district court applied the ACCA enhancement; it did not conclude that the *Shepard*-approved sources established that the 1985 offenses occurred "on occasions different from one another," but rather that Kirkland could not prove any-

---

[10] Based on the government's representations at the resentencing hearing and in its sentencing memo, we assume without deciding that Kirkland could have been convicted of both offenses under such a scenario under Arkansas law at the time.

thing to the contrary given the state of the record. The source of this burden shifting scheme upon which the government's argument rests is a footnote in *Hudspeth*, in which the majority of this court outlined the burden of proof for the separate occasions inquiry as follows:

> [U]nder § 924(e)(1), the government must establish that a defendant has three prior violent felony convictions. A certified record of conviction or a [PSR], if not challenged, will normally satisfy this showing. . . . The burden then shifts to the defendant to establish by a preponderance of the evidence that the prior convictions occurred on a single "occasion," and thus cannot be the basis for the sentence enhancement under § 924(e)(1).

*Hudspeth*, 42 F.3d at 1019 n.6 (internal citations omitted).

On appeal, Kirkland argues that this burden allocation combined with the *Shepard* source restriction means that the ACCA enhancement is automatic when there are few *Shepard*-approved documents and they are inconclusive as to the separate occasions inquiry. We agree that the landscape of the law involving sentencing enhancements such as the ACCA has changed dramatically since *Hudspeth*. When *Hudspeth* was decided, we assumed that district courts had free reign to develop a factual record regarding the crime of conviction to support an ACCA enhancement, and could rely upon a wide variety of sources to make factual findings. *Hudspeth*, 42 F.3d at 1019 n.3. That is clearly not the

case anymore. As discussed above, although *Shepard* involved the "violent felony" issue, its logic extends to the "different occasions" issue, and its notions that "certainty of record" is required for an ACCA enhancement and that "collateral trials" regarding past convictions should be avoided clearly conflict with *Hudspeth*'s approval of an extensive factual inquiry at sentencing regarding prior convictions. *See Shepard*, 544 U.S. at 23 n.4, 125 S.Ct. 1254 ("*Taylor* is clear that any enquiry beyond statute and charging document must be narrowly restricted to implement the object of the statute and avoid evidentiary disputes.").

When properly viewed in this post-*Shepard* context, we believe that the burden shifting scheme set forth in *Hudspeth* is no longer tenable because it essentially requires an ACCA enhancement even if the available *Shepard*-approved documents—the only evidence a sentencing court may consider—is inconclusive as to whether the offenses occurred on separate occasions. After thorough consideration of our prior precedent, the nature of proof for the different occasions inquiry, and the opinions of our sister circuits, we conclude that the more appropriate burden allocation for the separate occasions inquiry requires the government to establish by the preponderance of the evidence—using *Shepard*-approved sources—that the prior convictions used for the ACCA enhancement were "committed on occasions different from one another." In practice, this means that if the *Shepard*-approved documents before a district court are equivocal as to whether the offenses occurred on the same occasion, the ACCA does not apply.

This conclusion follows our well-established precedent. A review of our cases considering the separate occasions requirement before and after *Hudspeth* shows that we have only affirmed ACCA enhancements after concluding that the underlying record indicated that the prior offenses were committed sequentially. *See, e.g., United States v. Nigg*, 667 F.3d 929, 936 (7th Cir. 2012) ("Nigg's crimes were obviously committed in sequential fashion, as it is physically impossible for one person to commit three armed robberies simultaneously at three different locations against three different victims on three different dates."); *Morris*, 293 F.3d at 1013 ("[T]he two offenses committed by Morris, although close in time and location, involved distinct criminal aggressions from which he had an opportunity to cease and withdraw."); *United States v. Cardenas*, 217 F.3d 491, 492 (7th Cir. 2000) ("In this case, the two sales of crack cocaine on March 27 were two separate and distinct episodes. While Cardenas sold the crack cocaine to the same people, the sales were separated by forty-five minutes and a half a block. Cardenas had plenty of time to change his mind, to cease and desist, and to refuse to sell to the informants."); *Godinez*, 998 F.2d at 473 ("Godinez . . . committed his crimes against different victims, in different places, more than an hour apart. It would strain language considerably, without serving any purpose plausibly attributed to Congress, to treat the kidnapping and the robbery as a single 'occasion.'"); *Schieman*, 894 F.2d at 913 ("Schieman had successfully completed the burglary of Jenny's Cake Fair and safely escaped from the premises before committing the subsequent offense."). In fact, we

have not cited the portion of the *Hudspeth* burden shifting scheme that requires the defendant to prove that the prior offenses occurred on separate occasions since *Hudspeth*, and even then, it was not at issue.

Instead, whenever we have had doubts as to whether the record indicated that the offenses occurred on separate occasions, we have declined to use the offense as a predicate conviction for the ACCA enhancement or remanded the case to the district court for further fact-finding. The first time we considered whether the defendant in *Hudspeth* was appropriately determined to be an armed career criminal, the district court had relied upon three burglary convictions the defendant had received in 1983 as the predicates for the ACCA enhancement. *United States v. Hudspeth*, No. 91-3786, 974 F.2d 1340, 1992 WL 205666, at *2 (7th Cir. 1992) (unpublished). The only information we had regarding the burglaries on appeal, however, was that the defendant and two co-defendants "had entered Homestyle Cleaners, Melocreme Donut, and Farmer's Insurance Company located in Springfield, Illinois." *Id.* We concluded that this "brief description" did not provide us with "sufficient information to discern whether the 1983 burglaries were part of the same or separate and distinct criminal episodes," and we therefore "[could not] decide whether Hudspeth's sentence was properly enhanced under § 924(e)." *Id.* (citation omitted). We vacated the defendant's sentence and remanded the case to the district court for further factual development. *Id.* After the district court inquired into the facts surrounding the three burglaries on remand, the majority of this court affirmed the ACCA

enhancement because the facts revealed that "Hudspeth committed three separate crimes, at three separate times, against three separate victims, in three separate locations," and that "[e]ntry into each successive business reflected a clear and deliberate choice to commit a 'distinct aggression.'" *Hudspeth*, 42 F.3d at 1022-23 (citation omitted).[11]

In a post-*Hudspeth* case, *United States v. Thomas*, we were again faced with an ambiguous record regarding a defendant's prior convictions. 280 F.3d 1149, 1159-60 (7th Cir. 2002). The defendant had three prior robbery convictions, and while we concluded that at least two of the convictions occurred on different occasions, we noted that "[i]t is unclear from the record whether the third robbery, which was committed on the same day as one of the others, was also committed on a different occasion because we do not know the time of day that the robbery occurred nor do we have any facts (other than the identity of the victim and the amount of money taken) surrounding the robbery." *Id.* at 1159 n.3. This ambiguity proved inconsequential in *Taylor* because the defendant had an additional conviction that served as the third predicate offense for the ACCA enhancement. *Id.* at 1160. Nevertheless, it shows that we have not endorsed the government's position that proof of prior "violent felony" convictions plus an ambiguous record

---

[11] As noted above, in *Hudspeth* the majority relied upon sources for this conclusion that can no longer be considered after *Shepard*.

regarding the separate occasions inquiry is sufficient to support an ACCA enhancement.

Unlike with other questions for which the defendant bears the burden of proof at sentencing, requiring the government to prove by the preponderance of the evidence that the prior offenses occurred on separate occasions is not an onerous burden. Under § 924(e)(1), the government already has the burden of proving three predicate convictions for "violent felon[ies]," and after *Shepard*, the evidence used to determine that offenses occurred on separate occasions is the same evidence used to determine if the prior convictions were for "violent felon[ies]." *See Sneed*, 600 F.3d at 1332 ("[T]here is simply no distinction left between the scope of permissible evidence that can be used to determine if the prior convictions are violent felonies . . . or if they were committed on different occasions[.]"); *Thompson*, 421 F.3d at 286 (The "ACCA's use of the term 'occasion' requires recourse only to data normally found in conclusive judicial records, such as the date and location of an offense, upon which *Taylor* and *Shepard* say we may rely."). Indeed, in rejecting arguments after *Apprendi* that the separate occasions determination falls outside the *Almendarez-Torres* exception, we and other circuits have gone to great lengths to explain that the facts related to whether prior convictions occurred on different occasions cannot be easily distinguished from the facts related to the existence of the prior convictions. *See, e.g., Morris*, 293 F.3d at 1012 (concluding that the different occasions determination falls within the *Apprendi* exception); *United States v. Santiago*, 268 F.3d 151, 156-57

(2d Cir. 2001) ("[W]e are satisfied . . . that § 924(e)'s 'different occasions' requirement falls safely within the range of facts traditionally found by judges at sentencing and is sufficiently interwoven with the facts of the prior crimes that *Apprendi* does not require different fact-finders and different burdens of proof for Section 924(e)'s various requirements."); *Thompson*, 421 F.3d at 285-86 ("The data necessary to determine the 'separateness' of the occasions is inherent in the fact of the prior convictions."); *United States v. Burgin*, 388 F.3d 177, 186 (6th Cir. 2004) ("[T]he 'different occasions' requirement of § 924(e) cannot be significantly distinguished from 'the fact of a prior conviction.'"); *United States v. Harris*, 447 F.3d 1300, 1304 (10th Cir. 2006) ("Like the number of prior crimes and whether they are violent felonies, separateness is an 'inquiry intimately related to whether a prior conviction exists.'") (citation omitted).

Requiring the government to prove that the prior offenses occurred on separate occasions is also not an onerous burden because, as discussed above, a fundamental aspect of the framework we have adopted for the separate occasions inquiry is whether the defendant had an opportunity between offenses to cease from the criminal activity. Thus, if the *Shepard*-approved documents show that the offenses occurred on different days, or, in other words, were committed sequentially rather than simultaneously, the government will presumably meet its burden. Or if the documents show that the offenses occurred on the same day, but the nature of the offenses is such that they could not have occurred without giving the defendant an opportunity to recon-

sider his or her conduct and refuse to commit the second crime, the government will likely meet its burden. It is only in exceptional cases such as this one, which have factually sparse records and factors that complicate the determination of whether the offenses occurred simultaneously or sequentially, that the government will find it difficult to meet its burden. The Supreme Court has recently acknowledged, however, that the "absence of records will often frustrate application of the modified categorical approach," used to determine whether a prior offense qualifies as a "violent felony." *Johnson v. United States*, ___ U.S. ___, 130 S.Ct. 1265, 1273, 176 L.Ed.2d 1 (2010). We do not think that the lack of available records shedding light on the different occasions inquiry should lead to a different result.

The government's ease of access to proof for the separate occasions requirement stands in contrast to its access to proof for questions regarding the invalidity of a defendant's prior conviction, which the defendant bears the burden of proving when challenging the use of a prior conviction under the ACCA. *See, e.g., United States v. Gallman*, 907 F.2d 639, 643 (7th Cir. 1990) ("For purposes of section 924(e)(1), we believe that once the government has shown that a defendant has three prior 'violent felony' convictions, the burden rests with the defendant to show that the conviction was unconstitutional.") (citations omitted). We and other circuits have required defendants to bear this burden because "[a]ny given conviction might suffer any of a myriad of constitutional defects" and "[i]t would approach

the absurd to require the government to undertake to prove guilt all over again in every predicate conviction." *United States v. Ruo*, 943 F.2d 1274, 1276 (11th Cir. 1991) (adopting the *Gallman* standard for challenges to the validity of prior convictions).[12] Similarly, we have required defendants to bear the burden of proving by the preponderance of the evidence that their civil rights have been restored when challenging the use of a prior conviction under the "anti-mousetrapping" provision of 18 U.S.C. § 921(a)(20). *See United States v. Gant*, 627 F.3d 677, 682 (7th Cir. 2010); *United States v. Vitrano*, 405 F.3d 506, 509 (7th Cir. 2005). This is because "[i]t is certainly much easier for criminal defendants to raise the issue of whether their prior convictions have been nullified or their civil rights otherwise restored" than for the government "to refute every possibility that criminal defendants have had their prior convictions nullified or their civil rights restored." *United States v. Bartelho*, 72 F.3d 436, 440 (1st Cir. 1995); *see also Foster*, 652 F.3d at 791 ("Requiring [the government to prove beyond a reasonable doubt that the defendant's civil rights have not been restored] 'would impose an onerous burden,' seeing that a defendant 'ordinarily will be much better able to raise the issue of whether his . . . civil rights have been restored.'") (quoting *United States v. Flower*, 29 F.3d 530, 535 (10th Cir. 1994)). The same can be said of the career

---

[12] After *Custis v. United States*, 511 U.S. 485, 114 S.Ct. 1732, 128 L.Ed.2d 517 (1994), a defendant may only collaterally attack a prior state conviction obtained in violation of the right to counsel.

offender provision of the Sentencing Guidelines. *See, e.g.,*
*United States v. Joy*, 192 F.3d 761, 771 (7th Cir. 1999)
("Because the defendant is in the best position to know
whether he jointly planned two or more crimes and is the
beneficiary of any reduction in his sentence, he has the
burden of showing that his prior offenses were part of a
single scheme or plan [under the career offender pro-
vision of the Sentencing Guidelines.]") (citations omit-
ted). By contrast, in the vast majority of cases, proving
that a defendant's prior convictions were "committed on
occasions different from one another" will impose no
greater burden on the government than the govern-
ment already has in proving the existence of three
prior "violent felony" convictions.

Our conclusion that the government must prove
both the existence of the prior convictions for violent
felonies and that the prior convictions occurred on differ-
ent occasions is bolstered by our sister circuits' treat-
ment of the different occasions inquiry, which also indi-
cates that the burden for the different occasions
inquiry properly belongs with the government. For exam-
ple, in *United States v. Boykin*, the Fourth Circuit recently
vacated an ACCA enhancement where the district court
improperly considered a PSR that did not "bear the
earmarks of derivation from *Shepard*-approved sources" for
the separate occasions inquiry. 669 F.3d 467, 469-471
(4th Cir. 2012). Without the PSR, the only information
applicable to the different occasions inquiry found in
*Shepard*-approved sources was the fact that the defendant
was convicted of two violent felonies—one for second-
degree murder and the other for assault with a deadly

weapon inflicting serious injury—on the same day. *Id.* at 471-72. The Fourth Circuit concluded that the "ACCA cannot apply on such a meager factual basis," reasoning that "[i]t cannot be said that simply because two crimes have been committed they necessarily occurred on different occasions; such an interpretation would nullify the different-occasions language in § 924(e)." *Id.* at 472; *see also United States v. Russell*, 402 Fed. Appx. 772, 773 (4th Cir. 2010) ("If the government can demonstrate, based upon *Shepard*-approved documents . . . that the [prior] convictions were committed on occasions different from one another, then the district court can apply the ACCA enhancement.") (internal citations omitted).

Similarly, in *Sneed*, the Eleventh Circuit was faced with an appeal from an ACCA enhancement in which the district court had considered police reports—a non-*Shepard*-approved source—in determining that the defendant's prior felony convictions were committed on different occasions. 600 F.3d at 1329. The state court indictment, which was the only *Shepard*-approved document produced by the government, contained the same language for each of the defendant's three drug offenses and did "not specify a date or time, much less different dates or different times on the same date." *Id.* at 1333. Because the "government must show 'the three previous convictions arose out of a separate and distinct 'criminal episode,'" and the government had not submitted any other *Shepard*-approved material, the Eleventh Circuit vacated the defendant's sentence and remanded the case for resentencing. *Id.* at 1332-33; *see also*

*United States v. Morejon*, 437 Fed. Appx. 795, 798-99 (11th Cir. 2011) (vacating sentence where the sources in support of the government's assertion that the crimes occurred on different occasions were arrest reports, which are not *Shepard*-approved, and the state court judgments did not include the date, time, or any facts about the offenses).

Other circuits have also suggested that the government bears the burden of proof under the different occasions inquiry or that an ambiguous record is insufficient to sustain an ACCA enhancement. *See United States v. Gillies*, 851 F.2d 492, 497 (1st Cir. 1988) ("[Because the defendant also had two convictions for robberies,] even if . . . the two burglary convictions stemmed from one 'episode' . . . the government still proved three 'violent felony' convictions as required by § 924(e)."); *United States v. Rideout*, 3 F.3d 32, 35 (2d Cir. 1993) ("[W]e reject Rideout's claim that the Government presented insufficient evidence to demonstrate that the triggering offenses were distinct. The District Court had the certified records of the prior state convictions, and the Government introduced evidence of the distance and travel time between the two homes."); *United States v. Brown*, 241 Fed. Appx. 890, 894-95 (3d Cir. 2007) (remanding ACCA-enhanced sentence due to the government's failure to meet "its burden under the ACCA to prove that Brown has been convicted of three serious drug offenses or violent felonies committed on separate occasions" because "[b]ased on the record as it stands, it is impossible to conclude that Brown was convicted of three offenses 'committed on occasions different from

one another . . ."); *United States v. DeRoo*, 13 Fed. Appx. 436, 438 (8th Cir. 2001) (vacating ACCA-enhanced sentence and remanding case for further examination of prior convictions because the record did not reveal "whether there were separate burglaries in 1989 or whether they were part of a continuous course of criminal conduct"); *Taylor*, 413 F.3d at 1157-58 (remanding case where district court may have relied upon non-*Shepard*-approved sources to determine that offenses were committed on separate occasions so that the district court could "determine whether the government can provide evidence regarding Taylor's prior violent crime convictions consistent with *Shepard* . . ."); *Thomas*, 572 F.3d at 950 ("[E]ven assuming it was permitted to revisit Thomas's ACCA status, the district court erred in concluding the Government presented insufficient evidence that the two predicate drug offenses were 'committed on occasions different from one another' . . . . The two indictments offered in the second sentencing satisfied the evidentiary requirements set out in *Taylor* and *Shepard*.") (internal citation omitted).

Only the Fifth and Ninth Circuits have cited the burden shifting scheme set forth in *Hudspeth*, *United States v. Bookman*, 263 Fed. Appx. 398, 400 n.1 (5th Cir. 2008); *United States v. Taylor*, 263 Fed. Appx. 402, 404 n.1 (5th Cir. 2008); *United States v. Phillips*, 149 F.3d 1026, 1033 (9th Cir. 1998), yet neither circuit has applied it as the government asks us to in this case. Rather than placing the burden on the defendant to put forth evidence that the prior offense occurred on the same occasion, both circuits have indicated that the government must

provide evidence that the offenses occurred on different occasions, and the defendant then bears the burden of challenging that evidence. *See Phillips*, 149 F.3d at 1033 ("The government carried its burden of proving by a preponderance of the evidence that Phillips committed three predicate offenses 'on occasions different from one another.' It did so by submitting unchallenged, certified records of conviction and other clearly reliable evidence. . . . The burden then shifted to Phillips to challenge the government's evidence.") (internal citations omitted). In *Bookman*, for example, the government submitted *Shepard*-approved documents that indicated that the defendant's prior convictions were for offenses committed on different dates and involved different victims. 263 Fed. Appx. at 399. The defendant argued, however, that the "documents provided by the Government did not sufficiently establish that his prior burglaries had been committed on different dates because the indictments alleged only that the offenses occurred 'on or about' certain dates, not on any specific dates." *Id.* The Fifth Circuit rejected the defendant's "attempt[] to introduce uncertainty as to the date of the offenses," and concluded that the defendant had not met his burden because he "provided no evidence that his burglaries occurred simultaneously[.]" *Id.* at 401.[13] Thus, the ACCA

---

[13] We note that in discussing whether the defendant met his burden regarding the different occasions inquiry, the *Bookman* opinion repeatedly references *United States v. Barlow*, a case in which the Fifth Circuit held that once the government estab-

(continued...)

enhancement was appropriate because the defendant did not refute the government's evidence indicating that the offenses occurred on different occasions. *Id.*; *see also Taylor*, 263 Fed. Appx. at 404-05 (affirming ACCA enhancement where the indictments and judgments for the two burglary convictions challenged by the defendant established that the two offenses took place nine months apart and the defendant did not put forth any evidence that the offenses occurred simultaneously). Similarly, in *Phillips*, the Ninth Circuit concluded that the ACCA enhancement was appropriate because the government had submitted reliable evidence that the defendant had committed robberies involving two different victims (in addition to a third prior felony conviction), and the defendant failed to submit evidence challenging the government's evidence. 149 F.3d at 1032.[14]

---

(...continued)

lishes the fact of a prior conviction, the defendant must prove the invalidity of the conviction by the preponderance of the evidence. 17 F.3d 85, 89 (5th Cir. 1994) (citing *Parke v. Raley*, 506 U.S. 20, 113 S.Ct. 517, 121 L.Ed.2d 391 (1992)). As explained above, while we agree that the defendant bears the burden of proving the invalidity of prior convictions, which are presumptively valid, *Parke*, 506 U.S. at 29-30, 113 S.Ct. 517, we believe that the burden of proof for the different occasions requirement is a different matter.

[14] Our recent opinion in *United States v. Sims*, No. 11-3550, slip op. at 3-5, 2012 WL 2370107, at *1-2 (7th Cir. June 25, 2012), accords with the different occasions inquiry as applied in *Bookman*, *Taylor*, and *Philips*. In *Sims*, the government submitted

(continued...)

Despite having cited the burden shifting scheme set forth in *Hudspeth*, both the Fifth and the Ninth circuits have declined to apply the ACCA enhancement when faced with an inconclusive record. *See Fuller*, 453 F.3d at 279; *United States v. McElyea*, 158 F.3d 1016 (9th Cir. 1998). In *Fuller*, the defendant argued that his two prior burglary convictions from the same day were not committed on separate occasions because he and an accomplice had entered the two buildings simultaneously. *Id.* at 278. Based on the state court indictments—the only *Shepard*-approved evidence in the record—the Fifth Circuit held that it could not "determine as a matter of law that the burglaries occurred on different occasions." *Id.* at 279. The Fifth Circuit noted that the defendant may have been convicted "even if he was only a party to the crime," and "[b]ecause the record [did] not contain the written plea agreement, the plea colloquy, or other *Shepard*-approved material that might resolve this question," it vacated the defendant's sentence with respect to the ACCA enhancement. *Id.* at 279-80.

As in *Fuller*, the defendant in *McElyea* had two prior burglary convictions that the district court used as

---

[14] (...continued)

evidence establishing that the defendant's two prior felony convictions at issue were for offenses separated by a week, and the defendant did not challenge that evidence or submit any evidence that would support a finding that the offenses occurred on the same occasion. *Id.* Given this record, we concluded that it was appropriate for the district court to treat the two offenses as separate. *Id.*

predicate felonies for the ACCA enhancement. 158 F.3d at 1018. The defendant argued, though, that the convictions were not "committed on occasions different from one another." *Id.* The record indicated that the defendant and an accomplice broke into a store that was part of a strip mall, and that a hole was cut in the wall shared with another store, and items were stolen from both stores, resulting in the defendant's two convictions for burglary. *Id.* The Ninth Circuit, in a split decision, noted that "the record . . . [did] not contain any information regarding the amount of time [the defendant] spent in each store or whether he stayed in one store while his accomplice entered the other store." *Id.* at 1021. The Ninth Circuit concluded that the district court erred in applying the ACCA enhancement because "we cannot say that the burglaries committed by [the defendant] were 'separate criminal episodes[.]'" *Id.* Thus, although the Fifth and Ninth Circuits have cited the burden shifting scheme set forth in the *Hudspeth* footnote, we believe that the conclusion we reach today is in line with both circuit's precedent regarding the different occasions inquiry.

In holding that the government bears the burden of proving by the preponderance of the evidence that a defendant's prior convictions were "committed on occasions different from one another" under § 924(e)(1), we affirm that "[a] defendant who has the opportunity to cease and desist or withdraw from his criminal activity at any time, but who chooses to commit additional crimes, deserves harsher punishment than the criminal who commits multiple crimes simultaneously." *Hudspeth*,

42 F.3d at 1021. Nevertheless, we believe that an ambigu-
ous record regarding whether a defendant actually had the
opportunity "to cease and desist or withdraw from
his criminal activity" does not suffice to support the
ACCA enhancement.[15]

## III. CONCLUSION

For the foregoing reasons, we REVERSE the judgment of
the district court and REMAND the case for resentencing
in accordance with this opinion.

---

[15] Because we conclude that the burden shifting scheme from
*Hudspeth* upon which the district court's decision relied is no
longer tenable, we need not reach Kirkland's second argument
on appeal that the district court erred in denying admission
of his affidavit and testimony.